Paul LOGRANDE, Plaintiff,

v.

**LOCAL 851 EMPLOYER GROUP PENSION PLAN, and Board of Trustees of Local 851 Employer Group Pension Plan, Defendants.**

No. CV 88–744 (RJD).

United States District Court,
E.D. New York.

Sept. 20, 1988.

Legal Services for the Elderly, Edgar Pauk, New York City, for plaintiff.

Stephen H. Kahn, New York City, for defendants.

## MEMORANDUM AND ORDER

DEARIE, District Judge.

This matter is before the Court on the parties' cross-motions for summary judgment. For the reasons stated below, the plaintiff's motion is granted and the defendants' motion is denied.

### BACKGROUND

Plaintiff was employed for over sixteen years as a truck driver under the aegis of Local 851 of the International Brotherhood of Teamsters. Upon retirement on January 1, 1986 at the age of sixty-four, plaintiff began receiving a monthly pension of $517.19 from the defendant Local 851 Employers Group Pension Plan ("the Plan"). As a condition to receipt of that pension, plaintiff signed a "retirement declaration"

evidencing his understanding that his retirement benefits would be subject to suspension if he were to become re-employed in the same industry, in the same trade or craft, and the same geographical area. Such a suspension is explicitly authorized by the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* ERISA 203(a)(3)(B), 29 U.S.C. § 1053(a)(3)(B).

Subsequent to plaintiff's retirement, his son fell ill with what was later learned to be acquired immune deficiency syndrome ("AIDS"). As a result, plaintiff began providing financial assistance to his son to help defray medical expenses. Because of plaintiff's rather small pension, however, the amount of financial assistance that he was able to provide to his son was minimal.

By October, 1986, plaintiff determined that he could assist his son financially only if he returned to work. Consequently, he began driving a van for Sky Express Courier, an air freight company, and continued to work for that entity until September 5, 1987. During his period of employment with Sky Express Courier, plaintiff filled out a certification form—a device used by the Plan to keep tabs on retirees' employment activities—stating, apparently falsely [1], that he had not been employed during the past year. Moskowitz Affidavit, Exhibit C.

Upon learning of plaintiff's employment, the Plan ceased payment of plaintiff's pension benefits on October 30, 1987, as his employment with Sky Express Courier unquestionably fit within the definition of employment that allowed the Plan either to suspend the payment of benefits or recoup through offset monies already paid out. *See* ERISA 203(a)(3)(B), 29 U.S.C. § 1053(a)(3)(B); 29 C.F.R. § 2530.203–3. In its letter to plaintiff informing of the interruption of benefits, the Plan explained to plaintiff his right to review of its decision, and set out the reasons for the cessation of payment of benefits, the period covered, and the amount involved. Moskowitz Affidavit, Exhibit D.

On December 14, 1987, plaintiff wrote to the Plan seeking review of its decision to cease payment of benefits. By letter dated January 15, 1988, the Plan denied that request. Plaintiff then retained counsel, who wrote to counsel for the Plan on February 11, 1988. In that letter, plaintiff's counsel correctly pointed out that the applicable Department of Labor regulation regarding offset of pension benefits provides that offsets cannot exceed in any one month twenty-five percent of that month's total benefit. *See* 29 C.F.R. § 2530.203–3(b)(3).

By letter dated February 22, 1988, the Plan responded by denying this second request for review, arguing that 29 C.F.R. 2530.203–3 does not limit the Plan to a twenty-five percent offset. Plaintiff then commenced this action on March 10, 1988. At the same time, plaintiff applied for a preliminary injunction. On March 30, 1988, the Court denied plaintiff's application for a preliminary injunction, finding that plaintiff was faced with only pecuniary injury, and thus had failed to demonstrate irreparable harm. Shortly thereafter, the parties filed these motions.

Plaintiff seeks summary judgment on his claim that the Plan's cessation of benefits was improper or, alternatively, limited to twenty-five percent of his monthly benefits. Plaintiff also seeks punitive damages, attorneys' fees, and dismissal of defendants' counterclaims. Defendants cross-move for summary judgment on their first counterclaim seeking a lump-sum recovery of all benefits improperly paid to plaintiff.

---

**1.** This certification form contains two boxes, each of which is followed by a signature line. Box A is checked if a pensioner has not been employed during the previous year; box B is checked if a pensioner has been employed. In addition, box B has several additional lines to allow a pensioner to list the name of his employer and various other employment information. The instructions on the form direct the person filling out the form to complete *either* box A *or* B. When plaintiff filled out this form, he checked box A but *printed* his name on the signature line next to that box. In addition, plaintiff *signed* his name next to box B, without checking the box, and failed to fill in the lines dealing with employer information. This was apparently done in order to allow the plaintiff both to convey the impression that he had not been employed and later to claim—as he does here—that he never "signed" the form stating that he had not been employed.

94

## DISCUSSION

One of the essential aims of the ERISA statute is to protect the vested rights of employees who are participants in pension plans. *See, e.g., Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983); *Vink v. SHV North America Holding Corp.,* 549 F.Supp. 268, 269 (S.D.N.Y.1982). ERISA does provide, however, for certain limited instances in which certain vested pension benefits may be suspended. Thus, a plan may suspend a pensioner's benefits

for such period as the employee is employed, subsequent to the commencement of payment of such benefits—

(i) ....

(ii) in the case of a multiemployer plan, in the same industry, in the same trade or craft, and the same geographic area covered by the plan, as when such benefits commenced.

ERISA 203(a)(3)(B), 29 U.S.C. § 1053(a)(3)(B). That section of ERISA further provides that

The Secretary [of Labor] shall prescribe such regulations as may be necessary to carry out the purposes of this subparagraph....

*Id.* The Secretary of Labor has issued a regulation governing the suspension and offset of pension benefits. That regulation, 29 C.F.R. 2503.203–3, provides that a plan may suspend the payment of monthly pension benefits for each month during which a participant is currently employed for forty or more hours in the same industry, in the same trade or craft, and the same geographic area. 29 C.F.R. § 2503.203–3(b)(1). This employment is commonly referred to as "section 203(a)(3)(B) service." The regulation requires plans to adopt a procedure whereby a retiree may request a determination from a plan whether contemplated employment will constitute section 203(a)(3)(B) Service. 29 C.F.R. § 2530.203–3(b)(6). The regulation also provides for the recoupment of payments previously made to one who is no longer employed in section 203(a)(3)(B) service. However, the method of recoupment, or "offset," by a plan is a severely restricted one:

*Offset Rules.* A Plan which provides for the permanent withholding of benefits may deduct from benefit payments to be made by the plan payments previously made by the plan during those calendar months or pay periods in which the employee was employed in section 203(a)(3)(B) service, *Provided,* That such deduction or offset does not exceed in any one month 25 percent of that month's total benefit payment which would have been due but for the offset....

29 C.F.R. 2503.203–3(b)(3). Finally, the regulation provides that a plan may not suspend or offset any payments without giving prior notice to a participant of the manner in which the offset will be effected. 29 C.F.R. § 2530.203–3(b)(4).

Plaintiff argues first that the plan improperly "suspended" his pension benefits because it did not adopt a "status determination" procedure whereby plaintiff could have inquired whether his job with Sky Courier would result in a forfeiture of benefit. This argument requires little discussion because there is nothing in the regulation or its legislative history indicating that a Plan's failure to adopt a status determination procedure would preclude it from effecting a suspension or offset. Moreover, plaintiff's signing of the retirement declaration indicates that he understood that his pension was subject to suspension or offset if he took certain jobs. If plaintiff was unsure whether his Sky Express Courier employment would result in a suspension or offset, he could have contacted the Plan. Accordingly, this argument is unavailing.

Plaintiff argues next that he did not receive the notice mandated by 29 C.F.R. § 2530.203–3(b)(4) indicating the manner in which the plan would effect the offset. This argument is meritless because the Plan's letter of October 30, 1987, clearly apprised plaintiff of the total cut-off of benefit payments. The Court's only remaining inquiry, then, is the propriety of the Plan's one-hundred percent offset.

Plaintiff argues that the governing regulation clearly limits offsets to twenty-five percent of any month's benefit payments. Defendants, however, argue that while a literal reading of the regulation might support plaintiff's position, such an application is "nonsensical" because plaintiff clearly obtained funds to which he was not entitled. Defendants also argue that a denial of complete offset would be tantamount to giving plaintiff an interest-free loan.

The unambiguous wording of the regulation—promulgated by an executive department with particular expertise in this area—clearly supports plaintiff's argument, as it provides that no offset may exceed twenty-five percent of that month's total benefit payment. Moreover, the legislative history of the regulation demonstrates that the Department of Labor considered and rejected the arguments made by the defendants. For instance, the Department of Labor observed that

> Under paragraph (b)(3) of the proposal, a plan would be permitted to deduct from benefit payments to be made by the plan any payments previously made by the plan during those calendar months in which the employee was employed in section 203(a)(3)(B) service, provided that such deduction or offset does not exceed, in any one month, 25 percent of that month's total benefit payment which would have been due but for the offset. Many commentators objected to imposition of any limitation on the amount a plan could offset in any month because of the length of time which would be necessary for a plan to recoup the total amount of benefits which were paid while the retiree was employed in section 203(a)(3)(B) service. It was argued that such a limitation is unjustified, unfair to the plan, and likely in some cases to result in the inability of a plan to recapture the full amount to which it is entitled. Commentators also expressed concern that under this provision plan fiduciaries would, in effect, be extending credit to parties in interest, which would constitute a prohibited transaction under section 406 of the act and section 4975 of the Code.

.    .    .    .    .

> In the Department's view, the offset rules, as proposed, adequately serve the purposes of [section 203(a)(3)(B) ] by reconciling the competing interests of Plans and affected retirees. The Department, therefore, has decided to adopt the offset rules without substantive change.

46 Fed.Reg. 8,902 (January 27, 1981). Notwithstanding the regulation, defendants argue that it should not be applied because plaintiff is using it to aid pension fund fraud, thus thwarting the purpose of the statute. This argument is unavailing because the regulation and its history make clear that the Department of Labor drew no distinction between recoupment of pension benefits innocently obtained by a retiree and those obtained with knowledge that there is no entitlement. Rather, recoupment *in all cases* is limited to twenty-five percent of the monthly benefit. Accordingly, this argument is without merit. Also without merit is defendants' reliance on the doctrine of unclean hands, as plaintiff is no longer seeking equitable relief. Moreover, unclean hands and estoppel are not grounds for suspension of pension rights. *Cf. Vink v. SHV North America Holding Corp., supra,* 549 F.Supp. at 271–73 (holding that there is no "fraud" exception to the nonforfeitability provisions of ERISA); Chafee, *Coming Into Equity with Clean Hands,* 47 Mich.L.Rev. 1065, 1092 (1949) (concluding that concentration by Judges on clean hands doctrine sometimes causes harm by distracting attention from basic policies applicable in situation before them). The Court is not unmindful that plaintiff's conduct should not be condoned. However, given ERISA's strong anti-forfeiture policy and the pellucid language of the governing regulation, the Plan must be denied the remedy it seeks.

In sum, plaintiff's motion for summary judgment on its claim seeking to cap offsets at twenty-five percent is granted. Thus, defendants' cross-motion for summary judgment must be denied and, accordingly, the first counterclaim dismissed.

Plaintiff also seeks summary judgment dismissing defendants' second counterclaim, which seeks recovery of the benefits paid to plaintiff on the ground of common law fraud. Plaintiff argues that this claim is pre-empted by ERISA. Section 514(a) of ERISA, 29 U.S.C. § 1144(a), preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." As our Court of Appeals has recently noted, Congress intended ERISA "to have a broad preemptive effect." *Environmental Encapsulating Corp. v. The City of New York*, 855 F.2d 48, 56 (2d Cir.1988) (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98–100, 103 S.Ct. 2890, 2900–2901 (1983)). Consequently, any state law will be deemed to "relate to" an ERISA plan if it has a connection with or reference to such a plan. *Id.* at 56. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 1558, 95 L.Ed.2d 39 (1987) (state common law action based on improper processing of benefits claim pre-empted); *Blakeman v. Mead Containers*, 779 F.2d 1146, 1151 (6th Cir.1985) (state law contract claim pre-empted); *Authier v. Ginsberg*, 757 F.2d 796, 800 (6th Cir.) (common law claim for discharge in violation of public policy pre-empted), *cert. denied*, 474 U.S. 888, 106 S.Ct. 208, 88 L.Ed.2d 177 (1985). Here, defendants assert their common law fraud claims in an attempt to skirt the limitations imposed by the regulations on the amounts the Plan can recoup through offset. These claims clearly "relate to" the ERISA plan in every sense of those words and, consequently, must be pre-empted.[2]

Plaintiff's application for punitive damages is denied.

CONCLUSION

Plaintiff's motion for summary judgment on his claim seeking to impose a twenty-five percent limit on the amounts offset by the Plan is granted. Defendants' cross-motion for summary judgment on their first counterclaim is denied. Defendants' counterclaims are dismissed. The Plan is directed to resume immediately payment of plaintiff's benefits in accordance with the regulation. The Plan is also directed to remit to plaintiff within fifteen days of the date of this order that amount he would have received had the Plan correctly offset benefits pursuant to the governing regulation.

Plaintiff shall submit an application for attorneys' fees pursuant to 29 U.S.C. § 1132(g) within fifteen days of the date of this order.

SO ORDERED.

---

**2.** Defendants' reliance on footnote 15 in the history of 29 C.F.R. § 2530.203–3, *see* 46 Fed. Reg. 8,902 n. 15, is misplaced. There, the Department of Labor indicated only that "[a] plan's ability to effect recoupment by means other than offsets from future benefit payments is beyond the scope of [29 C.F.R. § 2530.203–3]." This hardly amounts to an endorsement by the Department of Labor that, as defendants argue, other remedies are available.