**Vernese E. BUTLER, Plaintiff,**

v.

**AETNA U.S. HEALTHCARE, INC., et al., Defendants.**

No. C–3–98–479.

United States District Court,
S.D. Ohio,
Western Division.

July 28, 2000.

---

Elaine Bernstein, Dayton, OH, for Plaintiff.

Eliott Good, Michael DeWitt, Columbus, OH, for Defendants.

**DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANTS' MOTION TO DISMISS (DOC. # 19); PLAINTIFF'S APPLICATION FOR A PRELIMINARY INJUNCTION (DOC. # 2) OVERRULED; CONFERENCE CALL SET**

RICE, Chief Judge.

This litigation stems from the Defendants' efforts to recoup an overpayment

that the Plaintiff allegedly has received under an employee welfare benefit plan. The Defendants have been recouping the overpayment by withholding the Plaintiff's monthly disability benefits under her Bellflex long-term disability plan, which is governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* Pending before the Court are the Plaintiff's Application for a Preliminary Injunction (Doc. # 2) and the Defendants' Motion to Dismiss, pursuant to Fed. R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted. (Doc. # 19). As a means of analysis, the Court first will address the Defendants' Motion to Dismiss. The Court will then consider the Plaintiff's Application for a Preliminary Injunction.

## I. *Defendant's Motion to Dismiss (Doc. # 19)*

In considering a motion to dismiss for failure to state a claim, the Court must "construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Cline v. Rogers,* 87 F.3d 176, 179 (6th Cir.1996), citing *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir. 1993).

In her Complaint, the Plaintiff makes the following factual allegations, which the Court must accept as true: Vernese Butler is a participant in a Bellflex long-term disability ("LTD") plan. (Doc. # 1 at ¶ 1). Defendant Aetna U.S. Healthcare is the plan administrator. (*Id.* at ¶ 2). The Bellflex plan is an "employee welfare benefit plan," within the meaning of 29 U.S.C. § 1002(a). (*Id.* at ¶ 3). Defendant Bell Atlantic Corporation is the Bellflex plan sponsor. (*Id.* at ¶ 4). Butler began re-

ceiving long-term disability benefits under the Bellflex plan on July 1, 1992. (*Id.* at ¶ 11). Thereafter, the Social Security Administration issued an October 29, 1997, decision "determining that the Plaintiff was totally and permanently disabled as of January 10, 1992." (*Id.* at ¶ 12). As a result of that ruling, Butler received Social Security Benefits, retroactive to January, 1993. (*Id.* at ¶ 13). On May 11, 1998, Aetna advised Butler that it had "suspended" all payments of long-term disability benefits to her. (*Id.* at ¶ 14). The Bellflex summary plan description provides that a participant who receives other sources of income, such as Social Security disability income, will have her monthly benefits under the plan reduced by the amount of that other income. (*Id.* at ¶ 15). On June 9, 1998, Aetna demanded payment, within thirty days, of $51,883.67 for an "overpayment" to Butler. (*Id.* at ¶ 16). Aetna informed Butler that "[f]ailure to respond to this request within thirty days from the date of this letter, will result in your file being referred to a collection agency." (*Id.*). The Bellflex plan does not provide an administrative remedy through which Butler can appeal the suspension and impoundment of her Bellflex long-term disability benefits. (*Id.* at ¶ 17). According to Butler, Aetna's continued withholding and impoundment of her long-term disability benefits, and the referral of her file to a collection agency, will cause irreparable harm.[1] (*Id.* at ¶ 18).

After reciting the foregoing factual allegations, Butler's Complaint sets forth four legal arguments. *First,* she contends "that the immediate collection of the claimed 'overpayment' in a lump sum on the basis of retroactive Social Security Disability benefits is not authorized by the plan document of the Defendant Plan and is arbitrary and capricious." (*Id.* at ¶ 19). *Second,* she asserts "that the total impoundment of future benefits to induce the

---

1. Although this "factual" allegation constitutes a legal conclusion, the Court has included it for purposes of completeness. However, the Court need not accept this conclusion of law as true.

immediate collection of the claimed 'over-payment' in a lump sum on the basis of retroactive Social Security Disability benefits is not authorized by the plan document of the Defendant Plan and is arbitrary and capricious." (*Id.* at ¶ 22). *Third,* Butler alleges "that the total impoundment of future benefits to induce the immediate collection of the claimed 'overpayment' in a lump sum on the basis of retroactive Social Security Disability benefits is without any inquiry as to the impact on the Plaintiff [and] is contrary to the equitable, fiduciary duty to ·administer the plan for the sole and exclusive benefit of the participant (Plaintiff)." *Fourth,* she contends "that the computation and assessment of the claimed overpayment amount caused by the retroactive award of Social Security disability benefits and the decision to impound all future benefits and to demand the immediate repayment in a lump sum on threat of instituting collection proceedings without providing a claims review process and notice thereof is in violation of 29 U.S.C. § 1133 and the Department of Labor regulations implementing same." (*Id.* at ¶ 26).

■ Before addressing the merits of the Defendants' Motion to Dismiss, the Court must determine the proper universe of evidence that it may consider. In the present case, Butler has attached to her Complaint a copy of her Bellflex LTD summary plan description ("SPD"). (Doc. # 1 at Exh. 1). Consequently, the Court may consider the summary when ruling upon the Defendants' Rule 12(b)(6) Motion to Dismiss. *See* Fed.R.Civ.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). Additionally, the Court previously directed the Defendants to file an authenticated copy of the full Bellflex LTD plan document, and the Defendants have complied with the Court's request. (Doc. # 30, 32). Although Butler did not attach the full LTD plan to her Complaint, the Court notes that it may rely upon the full plan document, as opposed to the sum-

mary plan description, *without* converting the pending Motion to Dismiss into a motion for summary judgment.

■ Although "[m]atters outside of the pleadings are not to be considered by a court in ruling on a 12(b)(6). motion to dismiss[,] ... a defendant may introduce certain pertinent documents if the plaintiff fails to do so." *Weiner v. Klais and Co., Inc.,* 108 F.3d 86, 88–89 (6th Cir.1997). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Id.* at 89, citing *Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993). Accordingly, the Sixth Circuit has held that " '[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.' " *Id.,* quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir.1993); *see also Greenberg v. Life Ins. Co. of Virginia,* 177 F.3d 507 (6th Cir.1999), quoting James Moore, *et al.,* Moore's Federal Practice § 56.30[4] (3d ed. 1998) ("Under certain circumstances, however, a document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings.... This occurs when 'a document is referred to in the complaint and is central to the plaintiff's claim....' In such event, 'the defendant may submit an authentic copy to the court to be considered on a motion to dismiss, and the court's consideration of the document ·does not ˙require conversion of the motion to one for summary judgment.' ").

In the present case, Butler's Complaint repeatedly refers to the "Defendant Plan" and the "plan document." (Complaint, Doc. # 1). Indeed, a central premise underlying her lawsuit is that the Bellflex LTD plan does not permit the Defendants to recoup an. overpayment of disability benefits by withholding a participant's fu-

ture benefits as they accrue. (*Id.*). In light, of Butler's numerous references to the LTD plan, and its crucial role in this litigation, the Court will consider the authenticated LTD plan provided by the Defendants when reviewing the pending Motion to Dismiss.[2]

■ Turning now to the merits of the Defendants' Motion, the Court concludes that Butler can prove no set of facts which would entitle her to relief on the first two counts of her Complaint.[3] As noted, *supra*, Butler asserts: (1) that the Bellflex plan does not entitle Aetna to receive a "lump-sum" recovery of the overpayment caused by her retroactive receipt of Social Security disability benefits; and (2) that the Bellflex plan does not authorize Aetna to "impound" her future plan benefits in order to recoup the overpayment. Even a cursory review of the pertinent plan language, however, reveals that both claims lack merit.

Notably, page eight of the Bellflex summary plan description provides, in relevant part: "[I]f you receive a retroactive lump sum award of your Social Security benefit for any time during which you received LTD benefits, the award is considered to reduce your LTD benefits and *is payable to your Company*." (Emphasis added). Likewise, Section 4.4(a) of the full Bellflex LTD plan provides, in relevant part:

(a) *Retroactive Social Security, Etc., Awards.* When amounts described in section 4.3 [which includes, *inter alia*, Social Security disability benefits] are paid or awarded to an Employee after the Employee begins to receive long-term disability benefits under the Plan, and the amounts relate to any period for which benefits were paid to the Employee under the Plan, the amounts which relate to such period may be recovered by the Plan from the Employee, to the extent the amounts would have reduced benefits under the Plan. *The Plan may recover these amounts directly from the Employee or from benefits payable to the Employee under the Plan.*

(Doc. # 32 at Exh. A) (Emphasis added).

Contrary to the assertions contained in Butler's Complaint, the foregoing language undeniably permits Aetna to recoup an overpayment caused by Butler's retroactive receipt of Social Security disability benefits. The foregoing language authorizes Aetna to recover the overpayment in one of two ways: either (1) directly from her, as the award is payable to the company[4]; or (2) by applying her monthly long-term disability benefits to the amount of the overpayment that she has received.

In light of the foregoing plan language, the Court finds no merit in Butler's first two claims for relief. Contrary to Butler's first claim, the controlling plan documents

2. In a Memorandum opposing the Defendants' Motion to Dismiss, Butler insists that the Court may not consider her December 3, 1998, deposition testimony, or the evidence adduced at a December 3, 1998, evidentiary hearing. The Court agrees that consideration of these materials is inappropriate in the context of the Defendants' Rule 12(b)(6) Motion to Dismiss. Accordingly, the Court will not rely upon them when addressing the merits of the Defendants' Motion.

3. As a threshold matter, the Court accepts Butler's argument that she properly brought her Complaint under 29 U.S.C. § 1132. (*See* Plaintiff's Memorandum in Opposition to Motion to Dismiss, Doc. # 20 at 8). The statute provides, *inter alia*, that a civil action may be brought by a plan participant, beneficiary, or

fiduciary to obtain appropriate equitable relief to "enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3)(B)(ii).

4. Although Butler's retroactive Social Security award was "payable" to the company under the terms of her Bellflex plan, the Court notes that the company does not receive actual Social Security disability checks directly from the federal government. Rather, by making any retroactive award "payable" to the company, the Bellflex plan apparently contemplated participants such as Butler either (1) signing their retroactive Social Security check over to the company, or (2) writing the company a new check for an amount equal to the retroactive Social Security award.

*do* allow Aetna to recoup its overpayment in a lump sum. The SPD provides that Butler's retroactive award itself is payable to the company, and the Bellflex plan authorizes the Defendants to seek repayment directly from the Plaintiff. Contrary to Butler's second claim, the plan documents *do* allow Aetna to retain Butler's monthly long-term disability check to recoup the overpayment that she owes the company. As noted above, the Bellflex plan permits Aetna to recoup its overpayment "from benefits payable to the Employee under the Plan."

Given Butler's failure to make her lump-sum, retroactive SSD award available to Aetna, the Defendants have elected to recoup the overpayment by retaining her monthly LTD benefits until they recover the full amount of Butler's debt. The Sixth Circuit has approved such a practice, even when reviewing plan language significantly less clear than the language at issue in the present case. *Cf. Lake v. Metropolitan Life Ins. Co.*, 73 F.3d 1372, 1377 (6th Cir.1996) ("Plan disbursements may be reduced for 'any' social security benefit. There is no basis for distinguishing between retroactive and prospective SSDI payments. Nor does [the plan] limit the offset to the month that the SSDI benefit was received. Thus, when the Lake Plaintiffs received the lump-sum SSDI award,

MetLife was entitled to reduce LTD benefits until it recovered the full amount of the payment."). As the *Lake* court noted, numerous other courts also have approved the recoupment of overpayments caused by a participant's receipt of a retroactive Social Security disability award. *Id.* at 1377, citing *Calloway v. Pacific Gas & Elec. Co.*, 800 F.Supp. 1444, 1448 (E.D.Tex. 1992); *Spray v. UNUM Life Ins. Co.*, 749 F.Supp. 800, 806 (W.D.Mich.1989); *Lessard v. Metropolitan Life Ins. Co.*, 568 A.2d 491, 496–498 (Me.1989); *Stuart v. Metropolitan Life Ins. Co.*, 664 F.Supp. 619, 622–624 (D.Me.1987), *aff'd per curiam*, 849 F.2d 1534; *Henning v. Metropolitan Life Ins. Co.*, 546 F.Supp. 442, 449–449 (M.D.Pa.1982); *see also Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279, 1287 (9th Cir.1990); *Cooperative Benefit Adm'rs, Inc. v. Whittle*, 989 F.Supp. 1421 (M.D.Ala.1997); *Greig v. Metropolitan Life Ins. Co.*, 980 F.Supp. 169, 171 (W.D.Va.1997). Based upon the foregoing analysis, the Court concludes that Butler can prove no set of facts which would support either her first or second claim for relief.[5]

With respect to Butler's third claim for relief, the Court reaches a different conclusion. In that claim, Butler asserts that the Defendants' "impoundment" of her plan benefits, "without any inquiry as

---

**5.** In opposition to this conclusion, Butler relies upon *Nesom v. Brown and Root, U.S.A., Inc.*, 987 F.2d 1188 (5th Cir.1993). Upon review, the Court finds such reliance misplaced. In *Nesom*, the Fifth Circuit found an ERISA plan *entitled* to recoup an overpayment caused by the beneficiary's receipt of a retroactive workers' compensation award. The court noted, however, that the plan contained no language requiring the plaintiff to repay the award in one lump sum. Consequently, the court reasoned that the defendant could recoup the workers' compensation benefits, on a monthly basis, from future plan payments to the plaintiff. *Id.* at 1195. In reaching this conclusion, the Fifth Circuit contrasted plan language regarding the defendant's recoupment of overpayments caused by the plaintiff's receipt of retroactive Social Security benefits. *Id.* at 1194. The plan permitted the defendant to estimate the

amount of a beneficiary's pending Social Security claims. If the claimant later received Social Security benefits in excess of the defendant's estimate, the insured promised to repay the defendant any overpayment caused by the retroactive Social Security award. *Id.* The *Nesom* court construed this promise as a "promise to repay *immediately* the *entire overpayment* caused by a lump sum award. . . ." *Id.* (Emphasis added).

As noted, *supra*, the Bellflex plan at issue in the present case also contains language obligating Butler to repay a retroactive Social Security award immediately. Indeed, the plan notes that such an award is payable to the company. Alternatively, the Bellflex plan allows the Defendants to recoup the overpayment by retaining future benefits. Despite Butler's assertions, *Nesom* does not support any argument to the contrary.

to the impact on the Plaintiff[,]" violates Aetna's "equitable, fiduciary duty to administer the plan for the sole and exclusive benefit of the participant." (Doc. #1 at ¶ 24).[6] Viewing Butler's Complaint in a light most favorable to her, and accepting her factual allegations as true, the Court is unable to say that she can demonstrate no facts entitling her to relief on this claim.

Without question, the Bellflex plan grants Aetna a *legal* right to withhold Butler's entire monthly benefit award until it recoups the overpayment caused by her retroactive receipt of Social Security disability benefits. As set forth above, the ERISA plan documents unambiguously permit the Defendants to obtain a lump-sum recovery from Butler or, alternatively, to recover the overpayment from benefits payable under the plan. The Sixth Circuit has recognized, however, that *equitable* principles may limit an ERISA fiduciary's legal right to recoup an overpayment of benefits.

In *Wells v. U.S. Steel & Carnegie Pension Fund, Inc.*, 950 F.2d 1244 (6th Cir. 1991), the court noted that principles of trust law obligate a District Court to consider the potential inequitable impact of requiring ERISA plan beneficiaries to remit an overpayment. *Id.* at 1251. In reaching this conclusion, the court reasoned:

> Although the Plan language permits recoupment, this court is concerned with the possible inequitable impact recoup-. ment may have on the individual retirees. The retirees submitted affidavits describing the hardship they would suffer if they were forced to pay back benefits which they had received and depended upon. We thus remand this case to the district court to consider whether, under the principles of equity or trust law, relief is unwarranted. We

do not, by doing so, suggest implicitly or otherwise any particular outcome. *Id.* at 1251. The *Wells* court then directed the lower court's attention to *Thorn v. United States Steel and Carnegie Pension Fund*, CV-P-1829-S (M.D.Ala.1983), in which an Alabama District Court identified several factors that a court should consider when determining whether an administrator's recoupment of an overpayment is inequitable: (1) the beneficiary's use of the money at issue; (2) the amount of the overpayment; (3) the nature of the mistake made by the administrator; (4) the amount of time which has passed since the overpayment was made; (5) the beneficiary's total income; and (6) the effect that recoupment would have on that income. *Id.* at 1251 n. 3.

In a concurring opinion in *Wells*, Senior District Judge Feikens agreed that equity may proscribe a plan administrator's ability to recoup overpayments made to a beneficiary:

> Having found that the Fund's recoupment rights are not limited by law, I do not foreclose the possibility that they are curtailed by equity. As a trustee of the Plan, the Pension Fund is bound by the equitable principles that govern trusts. Those principles allow a trustee or administrator of a trust to recoup overpayments to a beneficiary even if the excess payment was the product of a unilateral mistake on the part of the trustee. [citations omitted]. However, recovery is precluded if the beneficiary, in reliance on the correctness of the amounts of benefits, changes his position so that it would be inequitable to compel him to make restitution.

*Id.* at 1255 (Feikens, J., dissenting in part and concurring in part), citing *Thorn, supra*, at 3 n. 6; *see also Redall Industries, Inc. v. Wiegand*, 870 F.Supp. 175, 178 (E.D.Mich.1994) ("In their motion for par-

---

**6.** Parenthetically, the Court notes that Butler's claim mischaracterizes the nature of the fiduciary obligations imposed by ERISA. The statute imposes upon plan fiduciaries an obli- gation to act solely in the interest of *participants* and *beneficiaries* as a whole, and not for the "exclusive and sole" benefit of the Plaintiff. *See* 29 U.S.C. § 1104(a)(1)(A).

tial summary judgment, the Trustees argue that there is no issue of material fact on their restitution claim because: (1) the parties agree that Weigand received $974,346, and (2) the parties agree that Weigand received an overpayment of $427,281. However, [the] Trustees must also show that equity requires Weigand to return the overpaid benefits.").

In the present case, the Court cannot determine, without venturing beyond the bare allegations of Butler's Complaint, whether Aetna's present method of recoupment is inequitable. The various considerations addressed by the District Court in *Thorn*, and cited in *Wells*, simply do not lend themselves to consideration in the context of the Defendants' Motion to Dismiss. In short, without the ability to consider pertinent evidence, the Court cannot find that Butler will be unable to prove a set of facts demonstrating inequity in the Defendants' current recoupment method.[7] Accordingly, the Defendants' Motion to Dismiss is overruled, insofar as it relates to the third claim in Butler's Complaint.

With respect to Butler's fourth claim, however, the Court concludes that she can prove no set of facts entitling her to relief. Butler asserts that the Defendants violated 29 U.S.C. § 1133 by failing to provide her with an opportunity to seek administrative review of Aetna's decision to "impound" her benefits, demand immediate repayment, and threaten collection proceedings. In response, the Defendants contend that no violation of § 1133 has occurred, because the statute does not apply under the facts of the present case.

■ Section 1133 sets forth procedures that an ERISA plan must follow when it denies a claim for benefits. "In a nutshell, ERISA requires that the administrator communicate specific reasons for the denial to the claimant and that the administrator afford the claimant with an opportunity for a 'full and fair review.'" *Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d 1231, 1236 (7th Cir.1997); 29 U.S.C. § 1133(1) and (2). Regulations promulgated to effectuate the statute require the plan administrator's notice to include: (1) specific reasons for the claim denial; (2) references to plan provisions upon which the denial is based; (3) a description of any additional material needed for the claimant to perfect his or her claim; and (4) information concerning the proper procedure for obtaining administrative review of the claim denial. 29 C.F.R. § 2560.503–1(f). These procedural protections are "intended to safeguard the participants' substantive rights to receive benefits." *Pompano v. Michael Schiavone & Sons, Inc.*, 680 F.2d 911, 916 (2nd Cir.1982). By its unambiguous terms, § 1133 applies only when a claim for benefits under an ERISA plan has been "denied."

■ In the present case, Aetna sent Butler correspondence informing her that her monthly long-term disability benefits had been suspended. (Complaint, Doc. #1, at Exh. 3). As a basis for suspending the benefits and demanding immediate reimbursement, Aetna informed Butler that her retroactive Social Security award had resulted in a $51,883.67 overpayment of plan benefits. (*Id.* at Exh. 4). Based upon the allegations contained in Butler's Complaint, and the documents attached thereto, Aetna does not appear to have provided any notice concerning a proce-

---

**7.** In opposition to Butler's "equity" argument, the Defendants insist that she did not detrimentally rely upon any miscalculation of benefits. Rather, she simply failed to set aside, for payment to Aetna, the lump-sum, Social Security disability award that she received from the government. (Doc. #23 at 10). The Defendants also contend that Butler may not invoke principles of equity because she comes before the Court with "unclean hands." (*Id.* at 11). A proper review of these arguments, however, would require the Court to consider evidence beyond the scope of Butler's Complaint. Based *solely* upon the allegations in Butler's Complaint (and the documents attached thereto and incorporated by reference), the Court cannot sustain the Defendants' Rule 12(b)(6) Motion, as it relates to Butler's "equity" claim.

dure for obtaining administrative review of its action.

In their Motion to Dismiss, however, the Defendants argue that § 1133 is inapplicable because Aetna's recoupment of its overpayment, by withholding Butler's future LTD benefits, constitutes neither the *denial* of a claim nor the *termination* of plan benefits. The Court finds this argument persuasive. The Defendants are applying Butler's monthly plan benefits to reduce the substantial windfall that she has realized as a result of her retroactive Social Security disability award. Consequently, such benefits *are* being paid on Butler's behalf. The Defendants are simply applying the monthly payments to offset Butler's recognized financial debt to the plan. As the Court has explained in its analysis, *supra,* the Defendants' decision to offset or divert Butler's monthly check, as a means of recoupment, is expressly authorized by the Bellflex summary plan description and the plain language of the actual plan document. Consequently, the Court cannot

agree that the Defendants have terminated the Plaintiff's LTD benefits in the sense envisioned by § 1133.

In opposition to this conclusion, Butler insists that Aetna's actions *do* fall within the scope of § 1133, thereby obligating the Defendants to comply with the statute's notice and review procedures. In support, she cites *Grossmuller v. International Union, United Auto. Aerospace and Agricultural Implement Workers of America, UAW Local 813,* 715 F.2d 853 (3rd Cir. 1983) and *VanderKlok v. Provident Life Ins. Co.,* 956 F.2d 610 (6th Cir.1992). The Court finds these cases distinguishable. As the Defendants properly note, the plaintiff's pension benefits were *terminated* in *Grossmuller* because he was working for pay, in violation of the plan language. *Grossmuller,* 715 F.2d at 855. In *VanderKlok,* the plaintiff submitted a claim for benefits, and the claim was *denied. VanderKlok,* 956 F.2d at 613.[8] Conversely, as set forth above, Aetna has neither denied Butler's claim for disability benefits nor terminated those benefits.[9] Indeed, Aetna

---

**8.** In her Memorandum, Butler repeatedly asserts that the Defendants have drawn a false distinction between (1) the denial of a claim for benefits and (2) the termination of benefits. *(See, e.g.,* Doc. # 20 at 5–6). According to Butler, both actions require an ERISA plan administrator to comply with the mandates of § 1133. The Court does not dispute this contention. The termination of a claimant's benefits under an ERISA plan has been deemed a "claim denial" for purposes of § 1133. *See Grossmuller,* 715 F.2d at 853. In the present case, however, Butler's disability claim has not been "denied," and her disability benefits have not been "terminated." As explained more fully herein, Aetna continues to credit Butler with a monthly disability payment. It simply retains the payment and uses it to reduce the $51,883.57 windfall that Butler purportedly has received as a result of her retroactive Social Security award.

Butler also insists that if this Court approves Aetna's decision to withhold her LTD benefits, without requiring compliance with § 1133, then any "plan administrator could cheaply insulate itself from any review of its claims' decisions and any recourse by plan participants by paying a single monthly benefit for every claim and immediately terminating benefits thereafter." (Doc. # 20 at 5).

The Court finds this argument unpersuasive for at least two reasons. *First,* Butler's benefits have not been terminated. Rather, her LTD benefits are being credited against a substantial deficiency that she allegedly owes as a result of her retroactive Social Security award. Consequently, the Court finds Butler's hypothetical example distinguishable. Under the scenario envisioned by Butler, the aggrieved claimant *would* be entitled to notice and administrative review under § 1133. *Second,* even under Butler's scenario, the claimant would not be left without "any recourse." To the contrary, a plan administrator's failure to comply with § 1133 merely vitiates the need for a claimant to pursue administrative remedies before commencing litigation in federal court, which Butler has done in the present case. *See* footnote 9, *infra.*

**9.** Given that the Defendants have not terminated Butler's benefits or denied her claim, the Court also finds unpersuasive her reliance upon *Tavares v. Unum Corp.,* 17 F.Supp.2d 69 (D.R.I.1998), and *Medoy v. Warnaco Employees' Long Term Disability Insurance Plan,* 43 F.Supp.2d 303 (E.D.N.Y.1999). Butler cites *Tavares* in her Citation of Additional Authority (Doc. # 24). She cites *Medoy* in a second

continues to award monthly benefits on her behalf. Given Butler's receipt of a lump-sum Social Security award, which plainly was payable to Aetna under the terms of the plan, the company has been applying her monthly benefits to reduce the substantial debt that she owes the company. Consequently, for the reasons set forth more fully above, the Court concludes that the Defendants' actions do not implicate 29 U.S.C. § 1133.[10] Accordingly,

Citation of Additional Authority (Doc. # 27). Unlike the present case, in *Tavares* the plan did terminate the plaintiff's benefits because it could not verify her disability. Accordingly, the notice and hearing requirements of § 1133 applied in *Tavares*. Likewise, in *Medoy*, § 1133 applied because the defendant actually had terminated the plaintiff's plan benefits "for not meeting the policy's disability requirement." *Medoy*, at 308. For the reasons set forth more fully above, the Court concludes that Butler's benefits have not been "terminated" within the meaning of *Tavares* or *Medoy*.

Finally, the Court finds unpersuasive Butler's reliance upon *Logrande v. Local 851 Employer Group Pension Plan*, 695 F.Supp. 92 (E.D.N.Y.1988), which she also cites in her second Citation of Additional Authority (Doc. # 27). In *Logrande*, the plaintiff began receiving monthly pension benefits after retiring from his job as a truck driver. While drawing pension benefits, the plaintiff began working as a courier driver. However, a Department of Labor regulation allowed the pension plan to suspend its payments if a retiree, such as the plaintiff, became employed full-time in the same industry and geographic area as his former employment. *Id.* at 94. The regulation also allowed a pension plan to recoup any payments erroneously made while a retiree was working in the same industry and area. *Id.* Consequently, after the plaintiff quit his job as a courier driver, the plan administrator sought to withhold one-hundred percent of his reinstated pension benefits, in order to recoup the earlier benefits that had been improperly paid while the plaintiff worked as a courier. Upon review, the District Court limited the plan's recoupment to twenty-five percent of each month's benefits, however, citing a Department of Labor regulation that imposed such a restriction. *Id.* at 94–95. That regulation, which pertains to the recoupment of pension benefits when a retiree begins working, has no applicability in the present case.

**10.** Even assuming, *arguendo*, that Butler was entitled to notice and administrative review under § 1133, the Defendants' failure to provide such notice would only entitle her to forego the administrative review process and to challenge Aetna's actions in this Court. As the Sixth Circuit recognized in *VanderKlok:*

> The failure to follow administrative review procedures was [defendant's], not plaintiff's. Therefore, we do not believe it is necessary to require that plaintiff first submit additional evidence to [defendant] before bringing an appeal before the district court.... [T]he appropriate remedy is to remand to the district court with instructions to reconsider the issue of disability after plaintiff has been given the opportunity to submit additional evidence.

*VanderKlok*, 956 F.2d at 617; *see also Vance v. G.H. Bass & Co.*, 142 F.3d 438, 1998 WL 80185 (6th Cir. Feb. 18, 1998) (reasoning that when a plan administrator fails to comply with § 1133, a claimant who challenges the denial of her claim should "present evidence which supports her claim to the district court," not to the plan administrator). The practical result of a plan administrator's failure to comply with § 1133, then, is that a claimant may challenge a claim denial directly in federal court, rather than first pursuing administrative channels.

Furthermore, a District Court need not always allow a plaintiff to present evidence in support of her denied claim, even when a plan administrator fails to comply with § 1133. Such additional evidence is only pertinent if it could change the administrator's decision regarding the denied claim. *Kent v. United of Omaha Life Ins. Co.*, 96 F.3d 803, 807 (6th Cir.1996). When permitting a claimant to present additional evidence would constitute a "useless formality," a claimant is entitled to *no* substantive remedy for a violation of the procedural requirements set forth in § 1133. *Id.* (finding no reason to permit a plaintiff to present evidence in federal court, notwithstanding a violation of § 1133, when her assertion that the plan fiduciary had abused his discretion by denying her claim was "patently untenable," given that "much, if not all, [of] the objective medical evidence support[ed] the conclusion that plaintiff was not disabled").

In the present case, the Court has found the first two counts of Butler's Complaint foreclosed by the plain language of the Bellflex LTD plan and the summary plan description. Given that she can prove no set of facts entitling her to relief on those claims, the Defendants' failure to comply with § 1133 does not require any substantive remedy. *Kent*, 96 F.3d at 807. With respect to the third count

the Defendants' Motion to Dismiss is sustained, insofar as it relates to the fourth claim in Butler's Complaint.

■ Before turning to the pending Motion for a Preliminary Injunction, however, the Court briefly must address one additional claim that Butler raises in her Memorandum opposing the Defendants' Motion to Dismiss. Specifically, Butler contends that Aetna's withholding of her plan benefits as they accrue is prohibited by Ohio Revised Code § 2329.66(A)(10)(b), which provides:

> (A) Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order, as follows:
>
> . . .
>
> (10)(b) Except as provided in sections 3111.23 and 3113.21 of the Revised Code, the person's right to receive a payment under any pension, annuity, or similar plan or contract, not including a payment from a stock bonus or profit-sharing plan or a payment included in division (A)(6)(b) or (10)(a) of this section, on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the person and any of the person's dependents, except if all of the following apply:
>
> (I) The plan or contract was established by or under the auspices of an insider that employed the person at the time the person's rights under the plan or contract arose.
>
> (ii) The payment was on account of age or length of service.

(iii) The plan or contract is not qualified under the "Internal Revenue Code of 1986," 100 Stat.2085, 26 U.S.C. 1, as amended.

The Plaintiff asserts, without any explanation or supporting analysis, that the foregoing language prohibits the "impoundment" of her Bellflex LTD benefits because such an action constitutes a "*de facto* lien." (Doc. # 20 at 7). The Court finds this claim unavailing for several reasons. *First,* Butler's Complaint is devoid of any claim that the Defendants have violated Ohio Revised Code § 2329.66(A)(10)(b). Given Butler's failure to plead a violation of the statute, the Court need not consider her claim. *Second,* to the extent § 2329.66(A)(10)(b) relates to the Bellflex LTD plan, the Court strongly suspects that the statute is preempted. Indeed, much like the Ohio statute at issue, ERISA contains its own set of anti-alienation provisions. Those provisions *do not* prevent an ERISA plan from recouping an overpayment by offsetting future plan benefits. *Coar v. Kazimir,* 990 F.2d 1413, 1416–1425 (3rd Cir. 1993). The Court need not decide the preemption issue, however, because neither party has briefed the question and the Court finds Butler's argument unpersuasive for yet a *third* reason: Aetna's actions simply are not prohibited by the statute. In *Daugherty v. Central Trust Co.,* 28 Ohio St.3d 441, 504 N.E.2d 1100 (1986), the Ohio Supreme Court held that Ohio Revised Code § 2329.66 does not apply to "self-help setoff." *Id.* at 1104. Rather, the statute applies only to garnishment, attachment, execution, or sale to satisfy a judgment—actions which all require invocation of the judicial process. *Id.* at 1104–1105; *see also Stuart v. Metropolitan Life*

---

of Butler's Complaint, the Court already has determined that she must be given an opportunity to prove a set of facts entitling her to relief thereunder. Consequently, even assuming, *arguendo,* that the Defendants have violated § 1133, that violation would only entitle Butler to proceed with her present Complaint in this Court. Butler appears to recognize this fact in her related Application for a Pre-

liminary Injunction, in which she acknowledges that the Court has afforded her an opportunity to present additional evidence in support of her claims. (Doc. # 21 at 13–14). As a result, she urges the Court "to make a determination as to the propriety of recoupment," as opposed to ordering a remand to the plan administrator, if a violation of § 1133 occurred.

*Ins. Co.*, 664 F.Supp. 619, 626 (D.Me.1987) (rejecting plaintiff's reliance upon a New York statute similar to § 2329.66, because it "anticipates some type of legal action taken to satisfy a debt or liability of an insured, and does not extend to a 'self-help' situation where an insurer offsets benefits to recoup a prior overpayment"). For the foregoing reasons, the Court rejects the Plaintiff's argument that the "impoundment" of her Bellflex LTD benefits is prohibited by Ohio Revised Code § 2329.66.

Based upon the analysis set forth above, the Defendants' Motion to Dismiss (Doc. # 19) is SUSTAINED IN PART and OVERRULED IN PART. The Motion is sustained, insofar as it relates to Butler's first, second, and fourth claims for relief. The Motion is overruled, insofar as it relates to Butler's third claim for relief, which remains viable to the extent that she contends equitable principles may limit the Defendants' recoupment rights.

## II. Plaintiff's Application for Preliminary Injunction (Doc. # 2)

In her Application for a Preliminary Injunction, the Plaintiff seeks an Order directing the Defendants to resume her long-term disability payments. She also seeks an Order prohibiting the Defendants from utilizing a collection agency to recover the overpayment that she has received as a result of her retroactive Social Security disability benefits award. (Doc. # 2 at 1–2). After due consideration of the record, in light of pertinent legal authority and the terms of Butler's Bellflex plan, the Court finds her request for a preliminary injunction unpersuasive.

A District Court considers four factors when deciding whether to grant a preliminary injunction. Those factors are: "(1) the likelihood that the party seeking the preliminary injunction will succeed on the merits of the claim; (2) whether the party seeking the injunction will suffer irreparable harm without the grant of the extraordinary relief; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest is advanced by the issuance of the injunction." *Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir.1994). These four considerations are factors to be balanced, rather than prerequisites that must be met. *Id.* With the foregoing standards in mind, the Court turns now to its analysis of Butler's Application.

■ In support of her Application, Butler advances a number of arguments, some of which the Court has rejected, as a matter of law, in its analysis, *supra.* The Court now concludes that the Plaintiff has not demonstrated a substantial likelihood of success on the merits with respect to any of her claims.[11] In the one claim upon which the Court has overruled the Defendants' Motion to Dismiss, Butler first contends that the Defendants have violated 29 U.S.C. § 1133 because they terminated her plan benefits without providing an opportunity for administrative review. For the reasons set forth more fully above, the Court finds no likelihood that Butler will

---

**11.** When reviewing Aetna's decision to recoup its overpayment by withholding Butler's monthly plan benefits, the Defendants urge the Court to apply an "arbitrary and capricious" standard of review. (Doc. # 19 at 12). Such a standard applies when an ERISA plan grants the plan administrator the discretion to construe the terms of the plan. *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998). In the present case, the Defendants stress that the Bellflex plan grants the administrator "the sole right to grant and deny claims." (Doc. # 1, Complaint at Exh. 1, pg.

9). In light of this language, they argue that the "arbitrary and capricious" standard should apply. Given the Defendants' prior insistence that the present dispute does not involve the "denial" of a claim for benefits, however, the Court questions the applicability of the foregoing language. Nevertheless, after reviewing the unambiguous plan language at issue, the Court would find the Defendants' recoupment actions authorized, applying either an "arbitrary and capricious" or a "de novo" standard of review.

succeed on the merits of this claim.[12]

Butler next alleges that she is entitled to administrative review of the amount of the overpayment claimed by the Defendants. (Doc. # 21 at 8). Although the Court has concluded, *supra*, that the Plaintiff is not entitled to administrative review under 29 U.S.C. § 1133, she *may* challenge the Defendants' computations at trial, if she believes that they are erroneous. The Plaintiff has not demonstrated any likelihood of success on the merits of her miscalculation claim, however, because she cites absolutely no evidence indicating that a miscalculation has occurred.

The Plaintiff next contends that equitable principles should limit the amount of recoupment to which the Defendants are entitled. In support, Butler argues that the Defendants should have anticipated her future Social Security disability award when calculating her LTD benefits, and that they should have factored such an award into her monthly benefit payment. Butler also cites *Wells*, 950 F.2d at 1255, and *Thorn*, *supra*, for the proposition that "recovery is precluded if the beneficiary, in reliance on the correctness of the amounts of benefits, changes his position so that it would be inequitable to compel him to make restitution." Butler then reasons that she relocated to Dayton, purchasing and furnishing a home, in reliance upon the correctness of the Defendants' benefit

calculation. Accordingly, she argues that recoupment should be disallowed.

The Court finds no merit in Butler's assertion. Although the Court overruled the Defendants' Motion to Dismiss, insofar as it related to the "equity" issue, it did so only because the bare allegations of the Plaintiff's Complaint fail to demonstrate that she cannot prevail on her claim. In the context of Butler's Application for a Preliminary Injunction, however, the Court is not confined to the allegations contained in Butler's Complaint. Rather, the Court also may consider her deposition testimony and the evidence produced at the December 3, 1998, oral and evidentiary hearing on the Plaintiff's Application. After considering those materials, the Court concludes that Butler has not demonstrated a substantial likelihood of success on the merits of her "equity" argument.

In her Application for a Preliminary Injunction, Butler first argues that the Defendants' "own misfeasance" is the cause of her overpayment. In support, she cites her January 3, 1993, reimbursement agreement with Mutual of Omaha [Aetna's predecessor]. That agreement, however, lends no support to Butler's claim. It relates to "[m]onthly advances for disability for which Social Security benefits may later be payable." (Doc. # 19 at Exh. A). In her reimbursement agreement, the

---

12. In her Memorandum in Support of Preliminary Injunction (Doc. # 21), Butler contends that the Defendants should be estopped from denying her right to administrative review. Specifically, she reasons:

Defendants' current position that there is no right of the Plaintiff to administrative review of the decision to terminate benefits is at odds with their own prior actions wherein they attempted to terminate the benefits of this very Plaintiff. Plaintiff's benefits had previously been terminated. One such termination issued on January 2, 1996. The termination notification detailed a procedure for the review of the termination decision, (Exhibit 22) and her benefits were resumed during the pendency of the appeal process.

Having acknowledged the applicability of 29 U.S.C. § 1133 to decisions to terminate

benefits by their previous conduct, the Defendants are precluded from urging this Court to the contrary at this time....
(Doc. # 21 at 7).

In response, however, the Defendants point out that "Ms. Butler's benefits were previously terminated based upon the Plan's definition of 'Total Disability' and Ms. Butler was given the opportunity to have that decision reviewed. After receiving additional evidence, Aetna determined to reinstate her benefits." (Defendants' Reply Memorandum, Doc. # 23 at 3 n. 1).

In the present case, Butler's plan benefits have not been "terminated." Consequently, the Defendants' prior termination of her plan benefits is not relevant, and the Defendants are not estopped from arguing the inapplicability of 29 U.S.C. § 1133.

Plaintiff expressly agreed to reimburse Aetna for any overpayment arising:

> ... because of (1) the utilization of an estimated Social Security Disability Insurance Benefit for the purpose of computing my Long-term Disability Benefit; because of (2) any retroactive Social Security Disability Insurance Benefit awarded after an initial disallowance or on account of my delay in applying or delay in adjudicating my Social Security application; or because of (3) a delay in [Aetna] receiving information from me regarding a Social Security Disability Benefit award.

(*Id.*).

In short, the reimbursement agreement does not support an argument that equitable principles should preclude or limit the Defendants' recoupment of their overpayment to Butler. To the contrary, enjoining the Defendants from exercising their clear right to reimbursement would contravene the unambiguous language of the pertinent plan documents and the foregoing agreement. Such an order, therefore, would result in an inequity to the Defendants, who have reserved the right to seek lump-sum repayment from Butler directly or, alternatively, to offset her future plan benefits. Contrary to Butler's assertion, the Defendants' "misfeasance" did not cause her present plight. Butler's present situation is the direct result of her decision to spend her lump-sum, Social Security disability award, rather than paying it to Aetna as provided by the plan documents. *Cf. Cooperative Benefit Administrators, Inc. v. Whittle,* 989 F.Supp. 1421, 1433 (M.D.Ala.1997). Moreover, given her failure to provide Aetna with the lump-sum award, Butler cannot reasonably object when, in response, the Defendants proceeded to offset her future plan benefits, which was the only other option permitted by the plan.

In her second "equity" argument, the Plaintiff relies upon the Sixth Circuit's ruling in *Wells,* 950 F.2d at 1255, citing *Thorn, supra.* Butler cites *Wells* for the proposition that a plan's "recovery is precluded if the beneficiary, in reliance on the correctness of the amount of benefits, changes his position so that it would be inequitable to compel him to make restitution." (Doc. # 21 at 9). Upon review, the Court finds *Wells* distinguishable from the present case. The plaintiffs in *Wells* were retired former employees of the United States Steel Corporation who suffered from black lung disease as a result of their employment. *Id.* at 1245. In 1986, plan representatives discovered that the plan had been entitled to offset, against the plaintiffs' pension benefits, funds that the plaintiffs received through the Kentucky Special Fund, a state-sponsored black lung program. *Id.* at 1246–1247. Consequently, the plaintiffs were notified that their pension benefits would be reduced or terminated until overpayments of $6,000 to $50,000 were recouped. *Id.* at 1247. Upon review, the Sixth Circuit reasoned that the plan was legally entitled to recoup the overpayment. The court expressed concern, however, about the potential adverse effect on the plaintiffs. As a result, the court remanded the cause to the District Court to consider whether equitable principles should limit the plan's recovery. *Id.* at 1251.

In *Wells,* the court raised the equity issue largely because the plan had paid the plaintiffs' pension benefits, for an extended period of time, without ever offsetting Special Fund benefits against plan benefits. *Id.* at 1255 (Feikens, J., concurring). The court noted that the plaintiffs had relied and depended upon the correctness of their pension plan benefits. *Id.* at 1251. Consequently, the Sixth Circuit questioned the equity in allowing the Defendant to seek recoupment of benefits that long ago had been spent. *Id.*

Unlike the plaintiffs in *Wells,* however, Butler clearly *knew,* before her plan benefits ever commenced, that any retroactive Social Security disability award she might receive was payable to Aetna. Nevertheless, in contravention of plain plan lan-

guage, she spent the award and, in so doing, compelled the Defendants to seek recoupment by offsetting her future benefits. Thus, Butler's detriment, if any, stems from her own actions, and not from her detrimental reliance upon any error, delay, or improper actions taken by the Defendants. Indeed, the record is devoid of evidence suggesting that the Defendants might have led Butler to believe that she was entitled to retain the lump-sum Social Security award. To the contrary, the plan documents and Butler's reimbursement agreement unambiguously informed her that the Defendants were entitled to the retroactive award. Furthermore, upon discovering Butler's Social Security award, the Defendants promptly brought the offset and recoupment issues to her attention. Nevertheless, Butler chose to ignore her reimbursement agreement promise and the mandate of the Bellflex plan. For these reasons, the Court finds the present case readily distinguishable from *Wells.*[13]

Given the apparent lack of evidence supporting Butler's "equity" argument, the Court also would encourage the filing of a Motion for Summary Judgment directed toward her third claim for relief, which addresses the issue of equity.

Plaintiff next argues that the Bellflex plan does not allow the Defendants to "demand and collect a claimed overpayment in lump sum." (Doc. # 21 at 10). The Court finds this argument meritless. As set forth in detail, *supra*, the Bellflex plan explicitly does permit such a recovery. Indeed, the SPD provides that Butler's retroactive award itself is payable to the company, and the Bellflex plan authorizes the Defendants to seek repayment directly from the Plaintiff.

The Court also finds no likelihood of success on the merits of Butler's claims: (1) that the Bellflex plan does not permit the Defendants to offset her future benefits against her debt to the plan: and (2) that the Defendants' actions constitute a "*de facto* lien" in violation of Ohio Revised Code § 2329.66. (Doc. # 21 at 10–12). As the Court has explained, *supra*, the plan does permit such an offset, and Ohio Revised Code § 2329.66 does not apply in the present case.

Butler next asserts, with no explanation or analysis, that the Defendants' actions violate 29 C.F.R. § 2623.12(a)(2) [now 29 CFR § 4022.82(a)(2)]. As the Defendants properly note, however, that provision applies to recoupment of overpayments by the Pension Benefits Guarantee Corporation, and it has no applicability in the instant case.

For the foregoing reasons, the Court finds no significant likelihood that Butler will succeed on the merits of her Complaint. Indeed, the Court has sustained the Defendants' Motion to Dismiss, insofar as it relates to three of the four counts contained in Butler's Complaint. As to those claims, then, Butler has *no* chance of succeeding on the merits. With respect to her other claim, which is grounded in equity, the Court concludes that the equitable principles at issue plainly favor the Defendants rather than the Plaintiff. In short, for the reasons set forth more fully above, the Court finds no substantial likelihood that Butler will succeed on the merits of her equity claim against the Defendants. Consequently, the *first* factor in the Court's four-part balancing test militates strongly against the Plaintiff.

With respect to the *second* factor, whether the party seeking the injunction will suffer irreparable harm, Butler alleges in her Memorandum that she will suffer from "obvious irreparable harm inherent in the loss of reputation" if the Defendants refer her debt to a collection agency.

---

**13.** In her testimony during the December 3, 1998, preliminary injunction hearing, Butler stated that Aetna should not be permitted to recover its overpayment in a lump-sum, because she received her plan benefits over a period of years, not in a lump sum. Butler fails to recognize, however, that she did receive her retroactive Social Security award in one lump sum, and that award was payable to Aetna.

(Doc. # 21 at 14). In her Application for a Preliminary Injunction, Butler alleges that she will lose her home, her good credit rating, and her current standard of living if the Defendants are not enjoined from withholding her Bellflex LTD benefits. (Doc. # 2 at 5).

Although the Defendants' recoupment may impact the Plaintiff's standard of living, she presented no evidence at the December 3, 1998, preliminary injunction hearing to establish that, absent injunctive relief, her home was in imminent jeopardy of foreclosure. Additionally, the Court is not persuaded that a reduction in Butler's standard of living, pending resolution of this litigation, constitutes an "irreparable injury." The Court finds some merit, however, to Butler's argument that the Defendants' actions may harm her credit rating. In sum, the Court concludes that this factor militates slightly in favor of Butler.

With respect to the *third* factor, the probability that granting the injunction will cause substantial harm to others,[14] the Court concludes that granting injunctive relief will not result in significant harm to the Defendants. The Court's issuance of a preliminary injunction would merely delay the Defendants' recoupment efforts. On the other hand, Butler faces a substantial loss of income, as a result of the Defendants' recoupment actions, as well as possible damage to her credit rating. Consequently, while the Court finds the Plaintiff unlikely to prevail in her lawsuit, the potential harm that she faces if her injunction request is denied outweighs the potential harm to the Defendants if an injunction is granted. However, the *fourth* factor, whether the public interest is advanced by the issuance of the injunction,

militates strongly in favor of the Defendants. As set forth, *supra,* Butler owes a substantial debt to the Defendants as a result of her retroactive Social Security award. Pertinent plan documents allow the Defendants to recoup this overpayment, either directly from the Plaintiff or by withholding her future plan benefits. The Plaintiff acknowledged her obligation to repay the Defendants by signing a reimbursement agreement. Furthermore, Butler's deposition testimony and the evidence presented at the December 3, 1998, preliminary injunction hearing reveal that, prior to this litigation, the Plaintiff never disputed her obligation to repay Aetna. Instead, she contacted the company and attempted to work out a repayment schedule.[15] Given these facts, the Court finds unpersuasive Butler's argument that the public interest will be served by the issuance· of an injunction against the Defendants.

After balancing the foregoing factors, the Court concludes that the Plaintiff has not demonstrated her entitlement to a preliminary injunction. Accordingly, the Plaintiff's Application for a Preliminary Injunction (Doc. # 2) is overruled.

### III. *Conclusion*

Based upon the foregoing analysis, the Defendants' Motion to Dismiss (Doc. # 19) is SUSTAINED in part and OVERRULED in part. The Motion is sustained, insofar as it relates to the first, second, and fourth claims for relief in the Plaintiff's Complaint (Doc. # 1). The Motion is overruled, insofar as it relates to the third claim for relief in the Plaintiff's Complaint (Doc. # 1).

---

**14.** Although the Sixth Circuit defines this branch of the four-part test in terms of harm to others, the focus is on the harm that a defendant will suffer if the requested injunctive relief is granted. It is with this factor that courts have traditionally balanced the equities (i.e., the harm that the plaintiff will suffer in the absence of an injunction is balanced against that which will befall the defendant if same is granted). *See Southern Ohio*

*Coal Co. v. United Mine Workers of America,* 551 F.2d 695 (6th Cir.1977).

**15.** Butler first offered to pay Aetna fifty dollars per month until her $51,883.67 overpayment balance was repaid. (Butler depo. at 23). Even assuming no interest, Butler's proposal would have resulted in an 85–year repayment term.

The Plaintiff's Application for a Preliminary Injunction (Doc. # 2) is OVERRULED.

Counsel listed below will take note that a telephone conference call has been scheduled for Friday, August 6, 1999, at 8:40 a.m., to establish a trial date and other dates leading to the resolution of this litigation.