Beatrice CHERENE, Plaintiff,

v.

FIRST AMERICAN FINANCIAL COR-
PORATION LONG–TERM DISABIL-
ITY PLAN and Hartford Life and
Accident Insurance Company, Defen-
dants.

No. C 03–02226 MJJ.

United States District Court,
N.D. California.

Feb. 18, 2004.

Cassie Springer-Sullivan, Daniel Mark Feinberg, Lewis & Feinberg, Oakland, CA, for Plaintiff.

Allison Marie Dibley, Esq., Dennis G. Rolstad, Sedgwick Detert Moran & Arnold LLP., San Francisco, CA, for Defendants.

## ORDER GRANTING IN PART and DENYING IN PART Plaintiff's Motion for Summary Judgment, DENYING Defendants' Motion for Summary Judgment, and REMANDING to Plan Administrator

JENKINS, District Judge.

This is an Employment Retirement Income Security Act ("ERISA") lawsuit regarding plaintiff Beatrice Cherene's long-term disability benefits. Now before the Court are cross motions for summary judgment by plaintiff and defendants First American Financial Corporation Long–Term Disability Plan and Hartford Life and Accident Insurance Company ("Hartford"). Having reviewed the memorandum submitted by the parties, and having had the benefit of oral argument, the Court hereby GRANTS IN PART and DENIES IN PART plaintiff's motion for summary judgment, DENIES defendants' motion for summary judgment, and REMANDS the case to the plan administrator for a determination consistent with the principles set forth in this order.

## BACKGROUND

The facts of this cases are generally not in dispute, and this background is based on the Joint Statement of Undisputed Facts submitted to the Court on December 9, 2003.

Cherene was employed by First American Financial Corporation ("First American") as a Senior Escrow Officer. As a First American employee, plaintiff was covered by First American's long-term disability plan issued by Hartford. The plan and this action are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. section 1001 *et seq.*

Cherene left work on April 14, 1999, and submitted a claim for long-term disability benefits under the plan. Hartford approved her claim on February 24, 2000, and Cherene has since been receiving long-term disability benefits under the plan. Cherene's gross monthly benefit is $4,573.92. However, pursuant to the policy, Cherene's long-term disability benefits are reduced when she also receives "Other Income Benefits." The policy defines "Other Income Benefits" as follows:

> **Other Income Benefits** mean the amount of any benefit for loss of income, provided to you or to your family as a result of the period of Disability for which you are claiming benefits under this plan. This includes any such benefits for which you or your family are eligible or that are paid to you, or to a third party on your behalf, pursuant to any:
>
> 1. temporary or permanent disability benefits under a Workers' Compensation Law, occupational disease law, or similar law, governmental law or program that provides disability or
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> 6. disability benefits under the United States Social Security Act . . . .
>
> Other Income Benefits also mean any payments that are made to you, your

family, or to a third party on your behalf, pursuant to any:

 \* \* \* \* \* \*

2. portion of a settlement or judgment, minus associated costs, of a lawsuit that represents or compensates for your loss of earnings;

 \* \* \* \* \* \*

If you are paid Other Income Benefits in a lump sum or settlement, you must provide proof satisfactory to us of:

1. the amount attributed to loss of income; and
2. the period of time covered by the lump sum or settlement.

We will prorate the lump sum or settlement over this period of time. If you cannot or do not provide this information, we will assume the entire sum to be for loss of income, and the time period to be 24 months. We may make a retroactive allocation of any retroactive Other Income Benefit. A retroactive allocation may result in an overpayment of your claim. Please see the provision entitled "What happens if benefits are overpaid."

Administrative Record ("AR") at 709–19.

Cherene chose to receive her long-term disability benefits without any reduction for *estimated* Other Income Benefits. Rather, under the agreement signed by Cherene, she is paid her full long-term disability benefits, and Hartford has "the option to reduce or eliminate future Long-Term Disability benefits payments in order to recover any overpayment balance that is not reimbursed." AR 121.

Cherene received workers' compensation temporary total disability benefits in the amount of $490 per week from April 26, 1999 through April 14, 2000, for a total of $24,990. Cherene received workers' compensation permanent partial disability benefits in the amount of $170 per week from April 28, 2000 through March 30, 2001, for a total of $8,160.

On April 10, 2001, Cherene entered into a Workers' Compensation Appeals Board Compromise and Release Agreement ("C & R") with First American and with American Guarantee & Liability/Zurick settling her workers' compensation claim for a total of $110,000. Of the $110,000 settlement award, certain explicit deductions were made: (1) the C & R specifically provided that money for permanent disability would be deducted from the settlement award, and an actual deduction of $22,780 was made; and (2) $16,500 was deducted to pay Cherene's attorney's fees. Ultimately, on April 23, 2001, Cherene received a settlement check in the amount of $70,720. The payment description for the settlement check reads: "WC WAGE LOSS & DISABILITY." Cherene sent Hartford a copy of the check she received, as well as a copy of the C & R.

The C & R provided that "the settlement is intended to compensate the applicant for all aspects of all outstanding issues, including, but not limited to, permanent disability, temporary disability, self-procured medical treatment, future medical care, right to reopen, penalties and mileage, which may be due to date." AR 96–103.

On June 1, 2001, Cherene informed Hartford that it had overpaid her by $1,601.60, and sent a check to Hartford for that amount as reimbursement. AR 348.

On January 22, 2002, the Social Security Administration approved Cherene's claim for Social Security Disability Insurance benefits, and found her to be entitled to a period of disability beginning April 14, 1999.

By letter dated October 8, 2002, Hartford informed Cherene that an overpayment of long term disability benefits in the

amount of $43,042.20 had occurred as a result of Cherene's Social Security Disability benefits award. Hartford further informed Cherene that reimbursement of this overpayment was due in full.

On October 25, 2002, Hartford sent another letter to Cherene informing her that the permanent partial disability benefits under worker's compensation also should have been deducted from her long term disability benefits, and therefore she had a total overpayment balance of $57,358.15 (including Other Income Benefits from Social Security Disability benefits and workers' compensation permanent partial disability benefits). Cherene was informed that reimbursement of this overpayment was due in full, and that no additional benefits would be issued without repayment of this balance.

By letter dated November 25, 2002, Cherene, through her attorney, informed Hartford that it had failed to provide sufficient information to Cherene for her to determine whether its calculation of her overpayment balance was correct, and demanding that her long term disability benefits be reinstated. Cherene contented that Hartford's recalculations did not indicate which offsets it had already taken from Cherene's benefits as compared to which offsets it was now claiming. In addition, Cherene requested that Hartford complete an enclosed worksheet prepared by her attorney to indicate income offsets for each month it was claiming, compared to the monthly payment Cherene had actually received from Hartford.

By letter dated December 4, 2002, Hartford informed Cherene's attorneys that her long term disability benefits had not been terminated but were being applied to her overpayment balance. Hartford also informed Cherene's attorney that the calculation worksheets it had previously provided to Cherene (with its October 8 and October 25, 2002 letters) "accurately re-flect what was paid and what should have been paid. Also, they accurately reflect the current offsets and benefit amounts. We are unable to complete your worksheet as we have already completed a worksheet." Finally, in response to Cherene's statement that she would welcome additional information, Hartford informed Cherene that the "recalculation sheet should be sufficient for the claimant's review."

By letter dated December 17, 2002, Cherene through her attorney, renewed her request for documents, including completing enclosed worksheets based on her assertion that she was unable to understand the basis for Hartford's claimed off-sets.

By letter dated January 14, 2003, Hartford referred Cherene to the provisions in the Certificate of Insurance booklet that explained the calculation and offset of Other Income Benefits. Hartford again informed Cherene that the calculation worksheets that it previously provided to Cherene (and that it was again enclosing for Cherene's information) were "clear, complete and correct." Hartford informed Cherene that she was entitled to appeal its decision.

By letter dated February 11, 2003, Cherene appealed Hartford's decision regarding the calculation of her overpayment balance and asserted that the correct amount was $31,463.38. Cherene included a check made payable to Hartford for this amount.

By letter dated March 18, 2003, Hartford informed Cherene that it had completed its review and that its prior letters had not accurately offset Cherene's Other Income Benefits. The letter explained Hartford's position that Cherene's Other Income Benefits should have included workers' compensation permanent partial and temporary total disability benefits,

Cherene's workers' compensation settlement, state disability insurance benefits, and Social Security Disability benefits. The letter concluded that Cherene's overpayment balance as of March 31, 2003, after deducting Cherene's two reimbursement checks (totaling $33,064.98), $4,000 in attorney's fees for Cherene's Social Security claim, $16,500 in attorney's fees for Cherene's workers' compensation claim, and six months of withheld benefits, was $45,657.73. Also in this letter, Hartford stated that "no further review" would be conducted with respect to Cherene's reimbursement. AR 018.

Cherene filed this lawsuit claiming that defendants are wrongfully withholding benefits owed. Cherene contends that under the terms of the plan, Other Income Benefits are limited to benefits for loss of income. On the other hand, defendants contend that the Other Income Benefits under the plan include workers' compensation benefits. Defendants have counterclaimed asserting causes of action for breach of contract, money due and owing, and declaratory relief.

## DISCUSSION

### I. Standard of Review

Defendants contend that the Court must review its disability determination under an abuse of discretion standard, while plaintiff argues that defendant Hartford has a conflict of interest that warrants less deferential review by the Court.

"[A] denial of benefits challenged under [ERISA] § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Bendixen v. Standard Ins. Co.,* 185 F.3d 939, 942 (9th Cir.1999). When the plan confers discretion on the plan administrator to determine eligibility for benefits, courts review the denial of benefits for abuse of discretion. *Id.* The "default is that the administrator has no discretion, and the administrator has to show that the plan gives it discretionary authority in order to get any judicial deference to its decision." *Kearney v. Standard Ins. Co.,* 175 F.3d 1084, 1089 (9th Cir.1999) (en banc).

The ERISA plan at issue here unambiguously provides Hartford with discretion to determine whether a claimant is entitled to benefits. Under the plan, Hartford has "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." AR 723.

Plaintiff does not contend that the policy does not confer discretionary authority upon Hartford; instead, plaintiff argues that de novo review should apply because Hartford has an inherent conflict of interest.

The Ninth Circuit has held that the abuse of discretion standard of review can be "heightened" by a plan administrator's conflict of interest. *See Atwood v. Newmont Gold Co.,* 45 F.3d 1317, 1322 (9th Cir.1995). There is an apparent conflict of interest where a long-term disability policy is both funded and administered by defendant. *See Bendixen,* 185 F.3d at 943; *Lang v. Long–Term Disability Plan of Sponsor Applied Remote Tech., Inc.,* 125 F.3d 794, 797 (9th Cir.1997). "Nevertheless, the presence of a conflict does not automatically remove the deference [courts] ordinarily accord to ERISA administrators who are authorized by the plan to interpret a plan's provisions." *Id.* "[O]nly a 'serious' conflict would heighten scrutiny." *Bendixen,* 185 F.3d at 943.

In *Bendixen,* the court explained:

In order to establish a serious conflict, the beneficiary has the burden to come

forward with "material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary." If the beneficiary cannot satisfy this burden, the district court should apply the traditional abuse of discretion review. If the beneficiary does satisfy the burden, the plan then bears the burden to show the conflict of interest did not affect the decision to deny benefits.

*Id.* (quoting *Atwood v. Newmont Gold Co.,* 45 F.3d 1317, 1322 (9th Cir.1995)).

The Ninth Circuit has found "material, probative evidence" of a serious conflict of interest to consist of "inconsistencies in the plan administrator's reasons," *Lang,* 125 F.3d at 799; *Tremain v. Bell Indus., Inc.,* 196 F.3d 970, 976 (9th Cir.1999), and a failure to provide the claimant with a full and fair review and the failure to follow plan procedures. *See Friedrich v. Intel,* 181 F.3d 1105, 1110 (9th Cir.1999).

## A. Hartford's Inherent Conflict of Interest

In *Lang v. Long–Term Disability Plan of Sponsor Applied Remote Technology,* 125 F.3d 794, 797 (9th Cir.1997), the court noted that when an ERISA plan is actually an insurance policy issued and administered by the insurer, the insurer's "dual role as both the funding source and the administrator of the Plan," creates an inherent conflict of interest. The plan here is a Hartford insurance policy administered by Hartford; therefore, Hartford has a conflict of interest when it makes benefit eligibility determinations. *See Jordan v. Northrop Grumman Corp. Welfare Benefit Plan,* 63 F.Supp.2d 1145, 1154 (C.D.Cal.1999) (noting that MetLife had a formal conflict because as the insurance company it had to pay the benefits it awarded as plan administrator).

## B. Evidence of Hartford's Actual Conflict of Interest

Plaintiff argues that Hartford's administration of plaintiff's benefits was affected by its financial self-interest, was handled inconsistently, and consisted of procedural irregularities. First, as to plaintiff's assertion that Hartford was acting in its own financial interest rather than its fiduciary obligation to administer the policy, plaintiff cites to an entry in plaintiff's file in which Hartford states: "Our policy, however, is abilities, and as it has rehab provisions which may result in earlier term[ination] of LTD benefits, will pay under ours." FN 022. This statement by itself is of little value for the Court to determine whether there was an actual conflict of interest.

Second, as to plaintiff's claim of inconsistency, plaintiff's cites to a portion of an entry in Cherene's case file from October 25, 2002–two weeks after Cherene sent Hartford the check she received from the C & R. The full entry states: "per review file w/ auditor, perm disability was not added to offset, even though it was indicated on compromise and release, should be added.. [sic] Nothing else on C/R should be deducted nothing else is due to amount of benefit due to loss of income". FN 008. Plaintiff argues that the last sentence of this entry is evidence that Hartford's auditor determined that nothing paid to Cherene under the C & R is deductible as an offset because none of it is for loss of income. However, plaintiff misconstrues this statement. The full statement is not evidence that Hartford's auditor found that none of the C & R was deductible, which would conflict with Hartford's later determination that all of the C & R was deductible. However, the entry is evidence that the Hartford auditor believed a *portion* of the C & R-that designated as permanent disability-is deductible as an offset, which is inconsistent with Hart-

ford's later determination that *all* of the C & R is deductible.

■ Finally, as to plaintiff's claim of procedural irregularities, plaintiff asserts that Hartford failed to comply with both the plan's procedures and the requirements of ERISA. Plaintiff argues that Hartford failed to provide her with an opportunity for "full and fair review" of an adverse benefit determination as required by section 503(2) of ERISA when it determined that Cherene's entire settlement award was an offset. Plaintiff is correct.

ERISA provides:

In accordance with regulations of the Secretary, every employee benefit plan shall—

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.

Additionally, the policy incorporates similar provisions which state:

**What notification will you receive if your claim is denied?**

If a claim for benefits is wholly or partly denied, you will be furnished with written notification of the decision. This written decision will:

1. give the specific reason(s) for the denial;

2. make specific reference to the Policy provisions on which the denial is based;

3. provide a description of any additional information necessary to prepare a claim and an explanation of why it is necessary; and

4. provide an explanation of the review procedure.

**What recourse do you have if your claim is denied?**

On any denied claim, you or your representative may appeal to us for a full and fair review. You may:

1. request a review upon written application within 60 days of the claim denial;

2. review pertinent documents; and

3. submit issues and comments in writing.

P0338.

Hartford's letter of March 18, 2003, was the first time that Hartford informed Cherene that it believed the overpayments were even larger than previously stated: "We have completed our review and find that our prior recalculation did not accurately offset her other sources of income.... [W]e have adjusted our prior recalculations." AR 013. Thus, even though Hartford had received a copy of the C & R in the spring of 2001, and was well aware of Cherene's settlement award, it waited until this late date-nearly two years later-to inform her that it considered the full C & R settlement to be Other Income Benefits subject to offset. It was also in this letter that Hartford stated that "no further review will be conducted with respect to [Cherene's] appeal." AR 018. Thus, Cherene was never given a full and fair review of Hartford's adverse benefit determination that her entire settlement award would be deducted from her benefits. Hartford's failure to give Cherene a full and fair review was in direct violation of section 503 of ERISA and its own policy.[1]

---

**1.** Defendants argue that the decision to withhold benefits and apply the benefit amount to

the claim for reimbursement is not covered by

Plaintiff also argues that Hartford failed to provide certain documents and engage in a "meaningful" dialogue with her regarding the claimed offsets. Plaintiff is correct that Hartford's determination regarding what constituted "Other Income Benefits" was done without meaningful explanation. While it is true that Hartford sent a series of letters to Cherene, and maintained that she had been overpaid, Hartford's letters are dismissive of Cherene's explicit questions and requests for clarification. Merely be examining the correspondence between the parties it is apparent that Cherene was attempting to understand Hartford's decision, rather than avoid her responsibilities. In fact, Cherene had-on her own initiative-discovered that she had been overpaid and promptly submitted reimbursement to Hartford. Additionally, Cherene reimbursed Hartford for the $31,463.38 that she understood to be the overpayment, and merely refused to pay the amount for which she requested further information. Again, Hartford's actions violate both ERISA and the explicit terms of the policy. Hartford refused to provide Cherene with the documentation she requested as required under the policy.

Hartford contends that it fulfilled its obligations to explain its decisions by referring Cherene to the language in the policy, and the specific provisions in the Certificate of Insurance booklet that explained the calculation and offset of Other Income Benefits. However, Cherene repeatedly wrote to Hartford requesting further information because she simply did not understand Hartford's calculations in light of the policy language. Hartford's failure to provide Cherene with any of the information she requested is further evidence of an actual conflict because Hartford acted more like an adversary. *See Friedrich v. Intel Corp.*, 181 F.3d 1105, 1110 (9th Cir.1999) (de novo review applied when evidence showed that administrator acted like an adversary determined to deny claim).

As the Ninth Circuit stated in *Bendixen,* evidence of a conflict of interest must be "beyond the mere fact of the apparent

---

section 503. Defendants cite *Butler v. Aetna U.S. Healthcare, Inc.,* 109 F.Supp.2d 856, 864–66 (S.D.Ohio 2000) for the proposition that section 503's requirements do not apply because Hartford did not "deny" or "terminate" Cherene's benefits. However, this Court does not find the reasoning in *Butler* to be persuasive. The *Butler* court failed to consider the ERISA regulation that defines an "adverse benefit determination." An "adverse benefit determination" is any of the following: "a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit ...." 29 C.F.R. § 2560.503–1(m)(4). A withholding of a benefit -even if done to compensate for a claimed reimbursement-is either a "reduction" or "failure to provide or make payment (in whole or in part) for, a benefit". *See id.* Hartford acknowledges that plaintiff's full long term disability benefit is $4,573.92 per month. That amount is then reduced by plaintiff's Other Income Benefits. Whether the reduction is taken prior to plaintiff's monthly payment or as a claim for reimburse-

ment, it is either a reduction from her full benefits or a failure to provide for a benefit. Accordingly, Hartford's claim for reimbursement is an adverse benefit determination that triggers the requirements of section 503.

Additionally, even if section 503 does not apply to Hartford's action, the Court does not rely merely on Hartford's failure to give adequate review under section 503. The plan at issue specifically states that when a claim is denied, the beneficiary may appeal to Hartford for a full and fair review. Hartford not only failed to comply with the procedures of section 503, but also failed to comply with the procedures of its own policy.

Finally, even if Hartford was not required to give a "full and fair review" of its decision, this Court determined that Hartford had no support for its decision to withhold all of Cherene's C & R as Other Income Benefits. The fact that Hartford did not give Cherene a "full and fair review" is merely evidence that Hartford had no support for its decision.

conflict" and the evidence must be regarding the defendant's obligations to the particular beneficiary. *Bendixen,* 185 F.3d at 943. Here, plaintiff has provided sufficient material, probative evidence, beyond the mere fact of an apparent conflict, tending to show that Hartford's had a "serious" conflict of interest. Accordingly, Hartford bears the burden of showing that its conflict did not affect its review.

### C. Hartford has not rebutted the presumption

Hartford has not rebutted the presumption of an actual conflict. It does not explain its failure to provide Cherene with further explanation of its decision to consider her entire C & R settlement as an offset. It does not explain its decision to terminate the review of Cherene's claim immediately upon its first notification to Cherene that the entire C & R was deductible. Nor does it explain why the entire offset should be considered deductible in the first place. Accordingly, the de novo standard of review applies.

### II. De Novo Review of Hartford's Determination

The administrative record reveals that, at a minimum, there is a genuine dispute as to whether Cherene's worker's compensation C & R settlement and the worker's compensation benefits paid for permanent partial disability prior to the settlement are "Other Income Benefits" under the terms of the policy. The C & R states: "the settlement is intended to compensate the applicant for all aspects of all outstanding issues, including, but not limited to, permanent disability, temporary disability, self-procured medical treatment, future medical care, right to reopen, penalties and mileage, which may be due to date."

Plaintiff contends that Hartford may only deduct for loss of income, and none of the C & R settlement was for loss of income. Instead, plaintiff asserts that the entire settlement amount of $70,720 that she received was for current and future medical care. As there is a genuine dispute of fact, the cross motions for summary judgment must be denied. *See Kearney v. Standard Ins. Co.,* 175 F.3d 1084, 1094 (9th Cir.1999) (en banc); *Jebian v. Hewlett Packard Co. Employee Benefits,* 349 F.3d 1098 (9th Cir.2003).

The proper procedural mechanism for resolving this case, then, is a bench trial on the administrative record. *See Kearney,* 175 F.3d at 1094–95. In such a bench trial, a district court may admit additional evidence from outside the administrative record if necessary for adequate de novo review. *See Ingram v. Martin Marietta Long Term Disability,* 244 F.3d 1109, 1115 (9th Cir.2001).

### III. Cherene's Other Income Benefits

Hartford contends that the terms of the policy establish that all compensation for permanent disability is deductible from her long-term disability benefits as Other Income Benefits. Hartford further claims that Cherene's C & R settlement was intended to compensate her for all her permanent disability claims. Thus, according to Hartford, Cherene was required to report the settlement to Hartford, and provide satisfactory proof of the amount attributed to loss of income, and the period covered by the lump sum or settlement. Hartford further contends that since Cherene failed to provide this information according to the specific terms of the policy, Hartford was entitled to "assume the entire sum to be for loss of income, and the time period to be 24 months." P0328.

On the other hand, Cherene claims that the policy provides that deductions are only made for other benefits that are to compensate for *loss of income.* She claims that the entire C & R settlement amount was for current and future medical costs,

and not for loss of income, and therefore the settlement is not Other Income Benefits. Thus, she claims that while she sent Hartford a copy of the settlement and the check she received, she was not required to give Hartford any further information because she did not believe the settlement to be for loss of income.

As outlined above, the policy provides that Other Income Benefits mean, "the amount of any benefit for *loss of income* ... This includes any such benefits ... that are paid to you ... pursuant to any: 1. temporary or permanent disability benefits under a Workers' Compensation Law ...". P0328 (emphasis added). The policy is clear that not all disability benefits are deductible-only those for loss of income.

What is unclear from the record is how much, if any, of Cherene's C & R settlement is for loss of income. Hartford terminated Cherene's appeal at the same time that it notified Cherene that it found the entire C & R settlement to be deductible, therefore there is no detailed analysis in the record of Hartford's determination. Hartford's letter of March 18, 2003 simply quotes the policy language and does not apply-in any reasonably comprehensible form-the policy language to Cherene's claim. The letter then lists nearly three pages of dates and numbers that are presumably deductions for specific time periods. This Court is unable to evaluate Hartford's determination based on this letter.

■ Hartford's determination that the entire C & R settlement is deductible was based on its decision that Cherene failed to provide Hartford with satisfactory proof as to how much of the settlement amount was attributed to loss of income, and over what period of time the settlement covered, therefore, Hartford's "assumed" the entire sum to be for loss of income. However, this Court finds that Hartford had no support for its conclusion that all of the C & R

was for loss of income, and in fact, Hartford had sufficient information to conclude that not all of the C & R was for loss of income. Hartford had been given a copy of the C & R and a copy of the check. If it did not find such information to be satisfactory, it had numerous opportunities in its repeated correspondence with Cherene to request further information. While the initial onus was on Cherene to submit information to Hartford, there are two reasons why Cherene fulfilled that obligation: (1) she provided a copy of the C & R and explained the deductions it contained (AR 208–216); and (2) she did not believe that any of the settlement amount was for loss of income and therefore did not know that she needed to provide any additional information.

Additionally, Hartford's own auditor had earlier determined that only a portion of the settlement agreement was deductible, and there is no explanation for Hartford's decision or need to assume otherwise.

Since this Court is without sufficient information to make a determination as to the appropriate amount, if any, of the C & R settlement that is deductible, the most equitable solution at this point is to remand this case back to the plan administrator for a determination consistent with the principles set forth in this decision. *See Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 461 (9th Cir. 1996) ("We now make it explicit, that remand for reevaluation of the merits of a claim is the correct course to follow when an ERISA plan administrator, with discretion to apply a plan, has misconstrued the Plan and applied a wrong standard to a benefits determination."). The Court directs Hartford to engage in a thorough and meaningful evaluation in concurrence with Cherene over how much, if any, Cherene owes to Hartford in reimbursements

under the plan. Only such amount may be deducted from Cherene's long-term disability benefits.

## IV. Preemption of Counterclaims

Defendants have counterclaimed against plaintiff asserting causes of action for breach of contract, money due and owing, and declaratory relief. Plaintiff argues that defendants' counterclaims are state law causes of action, which are preempted by ERISA.

Section 502(a)(3) of ERISA authorizes plan administrators to bring suit in federal court to obtain "appropriate equitable relief" to "enforce ... the terms of the plan." 29 U.S.C. § 1132(a)(3). Plaintiff argues that whatever label defendants give to their counterclaims, the claims are actually state law causes of action for legal relief, i.e., money damages. Therefore, according to plaintiff, the claims are preempted.

In *Westaff v. Arce*, 298 F.3d 1164 (9th Cir.2002), the Ninth Circuit analyzed this very question of whether an insurance company could bring an action seeking a money judgment in federal court against its insured for reimbursement of overpayments despite section 502(a)(3). The Court found that the insurer had attempted

> to characterize its claim as one for equitable relief, labeling it as a declaratory judgment action or action for specific performance. In determining whether an action for equitable relief is properly brought under ERISA, we look to the substance of the remedy sought .... rather than the label placed on that remedy. [The insurer] is seeking to enforce a contractual obligation for the payment of money, a classic action at law and not an equitable claim. Although they often dance around the word, what petitioners in fact seek is nothing other than compensatory damages-monetary relief for all losses their plan sustained

as a result of the alleged breach of the reimbursement provision.

*Id.* at 1166. (internal citations and quotations omitted).

 Based on the Ninth Circuit's clear holding in *Westaff,* defendants' counterclaims are preempted. This Court must look beyond the "parties' chosen labels to the substance of the relief sought." *Id.* Despite defendants' labels, this is clearly a request for monetary relief-a legal remedy. Defendants are seeking reimbursement of the funds that they claim are due. Such a claim is preempted by ERISA.

Defendants, however, contend that the counterclaims are not preempted because they are proper causes of action under federal common law. Defendants cite several out-of-circuit opinions regarding the availability of federal common law remedies. *See UNUM Life Insurance Company of America v. Long,* 227 F.Supp.2d 609 (N.D.Tex.2002); *Jamail, Inc. v. Carpenters District Council of Houston Pension & Welfare Trusts,* 954 F.2d 299 (5th Cir. 1992). However, the Ninth Circuit in *Pacificare Inc. v. Martin,* 34 F.3d 834, 836 (9th Cir.1994), concluded that there is no such federal common law right. The court in *Pacificare* stated: "the Ninth Circuit has expressly refused to create federal common law causes of action under ERISA." *Id.* (citing *Lea v. Republic Airlines, Inc.,* 903 F.2d 624, 632 (9th Cir. 1990)). Specifically, the court noted that:

> the Supreme Court's approval of the development of a federal common law under ERISA does not authorize the creation of federal common law causes of action. The federal common law that the Court envisioned relates to rights and obligations under the ERISA plan and not to causes of action. Claims relating to ERISA plans must therefore invoke the specific remedies of ERISA § 502.

*Id.* (internal citations and quotations omitted).

At oral argument, defendants argued that the Supreme Court's decision in *Great–West Life & Annuity Insurance Co. v. Knudson,* 534 U.S. 204, 220, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) overrules *Pacificare,* and allows for a federal common law cause of action for reimbursement. Defendants' argument is unavailing. The Supreme Court's dicta in *Knudson* regarding the possibility of "other means" to obtain the preempted legal relief does not overrule the Ninth Circuit's clear determination that the federal common law right that defendants seek in this case is not available. *See id.*[2] Additionally, defendants' argument regarding the dicta in *FMC Medical Plan v. Owens,* 122 F.3d 1258, 1262 n. 2 (9th Cir.1997), is equally without merit.

In sum, the Court finds that defendants' counterclaims are preempted. Defendants do not have a federal common law cause of action, and the remedies sought under the state law causes of action are preempted by ERISA. The Court notes that the remedy sought by defendants will be provided by resolution of plaintiff's original claims; therefore, defendants are not left without a remedy. Thus, the Court GRANTS IN PART plaintiff's motion for summary judgment with respect to defendants' counterclaims.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART plaintiff's motion for summary judgment and DENIES defendants' motion for summary judgment. The Court REMANDS the case to the plan administrator remand for a determination consistent with the principles set forth in this order.

**IT IS SO ORDERED.**

---

**2.** The fact that this language is dicta is clear from the Court's opinion, which states: "We note, *though it is not necessary to our decision,* that there may have been other means for petitioners to obtain the essentially legal relief that they seek." *Knudson,* 534 U.S. at 220, 122 S.Ct. 708 (emphasis added). The Court then went on to explain that it was not expressing any opinion as to the availability of these other means.