## LOCAL GOVERNMENT INFORMATION SYSTEMS v. VILLAGE OF NEW HOPE.

248 N. W. 2d 316.

December 10, 1976—No. 46114.

*Corrick & Wood, W. J. Corrick,* and *John W. Wood, Jr.,* for appellant.

*Langlais & Smith* and *Terry C. Smith,* for respondent.

Considered and decided by the court en banc.

TODD, JUSTICE.

Several metropolitan municipalities, including New Hope, entered an agreement to investigate and develop a cooperative data and management information system. The agreement provided for withdrawal of a participant by written notice, which New Hope gave in August 1973. New Hope objected to the allocation of costs to it, and the organized group, Local Government Information Systems (LOGIS), brought this action to recover the amount allocated to New Hope. Following trial, judgment was entered for LOGIS, and New Hope appealed. We affirm.

In 1971, the managers of several metropolitan communities met informally to discuss the feasiblity of cooperative data processing. A steering committee was formed, information gathered, and inspection made of existing cooperative ventures in other states. The steering committee recommended further action and proposed formalization of the group by adoption of a joint powers agreement among the several municipalities as provided by Minn. St. 471.59. The formal agreement was presented to the manager of New Hope along with a memorandum suggesting aids in securing its adoption. The manager of New Hope presented the agreement together with the memorandum to the coun-

cil of New Hope with his recommendation that it be approved and executed. The council of New Hope authorized the execution of the agreement, and it was signed by its mayor and manager on May 1, 1972.

New Hope appointed its manager to the LOGIS board of directors and its finance manager as his alternate. New Hope indicated during the formative stages of LOGIS that time was important because its present equipment was in need of replacement. The early meetings of LOGIS focused on the adoption of a budget for the remainder of 1972 and 1973. On September 14, 1972, resolutions of LOGIS adopting the 1972 and 1973 budgets were forwarded to New Hope to the attention of its manager pursuant to article IX, § 2, of the joint powers agreement.

The budget figures were received by the manager and forwarded to the finance director of New Hope for his opinion. A finance report, authored by the finance director, was received by the manager but not reported to the council during the month of October. On October 31, 1972, the manager left the employ of New Hope. His failure to bring the budget requests of LOGIS to the attention of the New Hope council prior to October 15, 1972, is of significance because of art. IX, § 2, of the joint powers agreement, which provides:

"An annual budget shall be adopted by the board at the annual meeting in July of each year. Copies shall be mailed, promptly thereafter, to the chief administrative officer of each member. *Such budget shall be deemed approved by the member unless, prior to October 15 of the year involved, the member gives notice in writing to the LOGIS secretary that it is withdrawing from the organization.*" (Italics supplied.)

The matter was first brought to the attention of the council on November 18, 1972. Concern was expressed at this meeting over New Hope's share of the budget, which amounted to $10,810 for 1972 and $16,225 for 1973. At this meeting the acting manager was instructed to contact the executive director of LOGIS

requesting his appearance before the council. This was done and the executive director appeared at the January meeting of the council. Subsequently, there were meetings and correspondence between the executive director and the new manager of New Hope concerning its continued role in LOGIS. The new manager continued to serve as a director of LOGIS. In the spring of 1973, LOGIS tendered to New Hope the opportunity to become a pilot city operator of the new system to determine its efficiency. New Hope declined because it was unable to obtain a firm assurance from LOGIS that the pilot project would not be discontinued after a period of time.

The new manager recommended to the council that it withdraw from LOGIS, and a formal resolution of withdrawal was adopted by the council on August 13, 1973. Pursuant to the provisions of art. XII, § 1, of the agreement, LOGIS billed New Hope for the full amount of the 1972 budget and for the amount of the 1973 budget, less the sum of $2,500 representing the estimated savings to LOGIS resulting from New Hope's withdrawal. New Hope refused to pay and LOGIS brought suit resulting in a judgment for recovery of $23,616.10 from New Hope.

New Hope assigns as error:

(1) The joint powers agreement is void for failure to comply with applicable statutory provisions.

(2) The principles of estoppel and waiver do not preclude New Hope from claiming an earlier withdrawal date by operation of contract.

(3) The amount of damages were improperly determined by the trial court.

■ New Hope's claim of invalidity of the joint powers agreement is premised on the alleged failure of the agreement to conform to certain applicable statutes. In evaluating this claim, it is essential that we keep in mind that the only contract being considered in this case is the joint powers agreement executed by New Hope on May 1, 1972. This agreement was not a contract for the purchase of goods. The contract was a mutual agreement

to develop a management information system, and the parties are bound by the provisions of the agreement. With this premise clearly in mind, we shall consider New Hope's allegation of invalidity.

New Hope contends that the agreement fails to meet the requirements of Minn. St. 412.691 relating to the authority and limitations imposed upon its manager. The statute provides in part:

"The manager shall be the chief purchasing agent of the city. All purchases for the city and all contracts shall be made or let by the manager when the amount of the purchase or contract does not exceed $1,000; but all claims resulting therefrom shall be audited and approved by the council as provided in section 412.271. *All other purchases shall be made and all other contracts let by the council after the recommendation of the manager has first been obtained.*" (Italics supplied.)

The presentation and execution of the joint powers agreement clearly conform to the provisions of this statute. New Hope claims that the failure of the manager to present the 1972 and 1973 budget statements to the council for action prior to October 15 allowed the manager to bind it to obligations beyond his statutory authority. This position is without merit since the claim upon which this action is based arises out of the joint powers agreement, which provided for affirmance of budgetary requests by failure to withdraw from LOGIS prior to October 15. The time for a member's objection to such a provision was when the agreement was executed and not after its application.

Nor do we find such a provision violative of the provisions of Minn. St. 412.271, subd. 1, which provides:

"No disbursement of city funds, including funds of any municipal liquor dispensary operated by the city, shall be made except by an order drawn by the mayor and clerk upon the treasurer. Except when issued for the payment of judgments, salaries and wages previously fixed by the council or by statute, principal

and interest on obligations, rent and other fixed charges, the exact amount of which has been previously determined by contract authorized by the council, and except as otherwise provided in subdivisions 4 and 5, no order shall be issued until the claim to which it relates has been audited and allowed by the council."

The obligations of New Hope arise out of the joint powers agreement, and its failure to act by withdrawal prior to October 15 merely provided the means of effectuating the agreement. This method is a practical one where a number of municipalities are dependent upon the actions of other participating municipalities in formulating their annual budgets, which must be timely submitted to the county auditor.[1] To require affirmative action by each participating municipality to approve the budget statement could needlessly hamper the efficient administration of government without serving any clearly discernible purpose.

The provisions of Minn. St. 412.271 requiring audit and allowance of claims are inapplicable since the exact amount of contract liability was available to the council before October 15. The remedy to avoid the obligation was withdrawal from LOGIS as provided for in art. IX, § 2. We will not permit New Hope to avoid its contractual obligations by asserting the audit-and-allowance procedures of § 412.271. This result is consistent with Minn. St. 471.59, subd. 3, with reference to disbursement of funds by participants in a joint powers agreement. The statute provides:

"The parties to such agreement may provide for disbursements from public funds to carry out the purposes of the agreement. Funds may be paid to and disbursed by such agency as may be agreed upon, *but the method of disbursement shall agree as far as practicable with the method provided by law for the disbursement of funds by the parties to the* agreement. * * * Strict accountability of all funds and report of all receipts and disbursements shall be provided for." (Italics supplied.)

The allocation of the expense of LOGIS to the participating

---

[1] See, Minn. St. 275.07 and 275.075.

municipalities is consistent with the purpose of the agreement to develop and operate a cooperative data processing facility. The italicized portion of this statute functions to expand, not to limit, the procedures to be followed by participating municipalities in paying their allocation of costs for the operation of LOGIS.

New Hope claims the notice addressed to the village of New Hope, attention its manager, was defective. The notice conforms precisely with the provisions of the joint powers agreement, and there is no merit to this claim. Further, we find no merit in New Hope's assertions that the contract is vague or lacks consideration.

■ New Hope asserts that if the joint powers agreement is valid, nevertheless it is entitled to earlier withdrawal from LOGIS by operation of contract. This claim is based upon art. IX, § 4, of the agreement, which in part provides:

"* * * Any member whose charges have not been paid within 45 days after billing shall be in default and shall not be entitled to further voting privileges nor to have its director hold any office nor to use any LOGIS facilities or programs until such time as no longer in default. In the event that such charges have not been paid within 45 days after such billing, such defaulting member shall be deemed to have given, on such 45th day, notice of withdrawal from membership."

Application of this provision to the action of New Hope in failing to pay the budget allocation submitted on September 14, 1972, would indicate a termination effective 90 days thereafter. However, the actions of the parties clearly support the conclusion of the trial court that this provision had been waived by the mutual consent and conduct of the parties. Illustrative of this conduct are the following:

(1) The activity of former city manager R. Michael Amyx in the development of LOGIS, his drafting of the agreement which created the cooperative group, and his participation in meetings of the board of directors during the summer of 1972.

(2) The participation and voting of Harlyn G. Larson, Amyx's successor, at the April 24, 1973, and July 25, 1973, meetings of LOGIS on behalf of New Hope.

(3) The attendance of Lawrence Watts, finance director of New Hope, at the April 24, 1973, LOGIS meeting, as well as his participation and membership in the systems evaluation committee of LOGIS at its meetings on February 6 and 27, 1973.

(4) The membership of Betty Pouliot, New Hope clerk and treasurer, on the LOGIS training committee and her attendance at committee meetings through June 1973.

(5) The attendance of 56 New Hope employees at a LOGIS training session on February 2, 1973.

Added to the aforementioned activity of the officials of New Hope in LOGIS are several letters from Larson to LOGIS officers, which evidence a recognition of the city's continuing membership in the association. In a letter to the LOGIS president on March 21, 1973, Larson stated:

"At this point it appears that my recommendation will be to drop out of Logis. While I personally would like to continue in Logis * * * I cannot find any real grounds on which to recommend continuing in the program."

A second letter addressed to Theodore Willard, executive director of LOGIS, again demonstrates Larson's recognition of New Hope's status as a member of LOGIS, and their need to formally withdraw:

"It is the firm opinion of the New Hope staff that the Village would be best served by withdrawing from LOGIS and providing its own in-house services in the areas being discussed in the LOGIS applications.

\* \* \* \* \*

"The key to the Village's reaction on this matter [withdrawal] will, of course, be the cost. If LOGIS is going to insist on full payment of all budget shares, the Village must decide if it is to

withdraw and pay; continue in the organization because of our investment, or simply not pay and fight any attempts to collect."

Finally, it should be noted that, from the beginning of the exploration of forming the LOGIS joint endeavor up to the summer of 1973, New Hope held itself out as a participating member of the LOGIS group. In reliance on that apparent status and on New Hope's actions as a participating member, LOGIS adopted its 1972 and 1973 budget and apportioned it among the various members. Each participating unit adjusted and adopted their 1972 and 1973 municipal budgets based upon the allocation of charges with New Hope as a member. In addition, New Hope, as well as the other LOGIS members, received the benefit of the continued progressive development of the cooperative data system for which LOGIS was originally formed.

Due to New Hope's continued participation in LOGIS, its highly equivocal conduct regarding withdrawal, and the reliance of LOGIS and its members on New Hope's apparent status as a participating member, New Hope is estopped to assert any rights under the automatic-termination clause.

New Hope contends that the doctrines of estoppel and waiver are not freely applied against municipal corporations. State, by Burnquist, v. Marcks, 228 Minn. 129, 36 N. W. 2d 594 (1949); Village of Newport v. Taylor, 225 Minn. 299, 30 N. W. 2d 588 (1948); The Alexander Co. v. City of Owatonna, 222 Minn. 312, 24 N. W. 2d 244 (1946). We agree that this rule applies when the relationship under consideration involves a private party and a municipality. However, when considering the relationship of municipalities with one another under a joint powers agreement, we perceive no reason to apply a restrictive standard but will apply the general principles of waiver and estoppel. Here, the finding of the trial court as to waiver and estoppel is amply supported by the evidence.

New Hope's challenge to the award of damages was principally based on its allegations as to the ascertainment of the date of withdrawal of New Hope from LOGIS. In view of our rejec-

tion of their position and in consideration of other evidence adduced at trial, we conclude that the award of damages by the trial court is not clearly erroneous and has sufficient evidentiary support.

Affirmed.