CITY OF MINNEAPOLIS, Respondent,

v.

MINNEAPOLIS POLICE RELIEF ASSOCIATION, ET AL., Appellants.

Nos. A10–1244, A10–1331.

Court of Appeals of Minnesota.

May 31, 2011.

168

Clifford M. Greene, Monte A. Mills, Sybil L. Dunlop, Greene Espel P.L.L.P., Minneapolis, MN; and John M. LeFevre, Jr., Peter G. Mikhail, Mary D. Tietjen, Kennedy and Graven Chartered, Minneapolis, MN; and Susan L. Segal, Minneapolis City Attorney, Peter Ginder, Deputy City Attorney, Minneapolis, MN, for respondent.

Charles E. Lundberg, Nicole A. Delaney, Bassford Remele, P.A., Minneapolis, MN; and Karin E. Peterson, Ann E. Walther, Rice, Michels & Walther, LLP, Minneapolis, MN; and Robert D. Klausner (pro hac vice), Klausner & Kaufman, P.A., Plantation, FL, for appellants.

Patrick J. Kelly, Trevor S. Oliver, Daniel J. Cragg, Kelly & Lemmons, P.A., St. Paul, MN, for amicus curiae Minneapolis Retired Police Officers' Association.

Caroline Bell Beckman, Mark Gaughan, Erickson, Bell, Beckman & Quinn, Roseville, MN, for amicus curiae International Association of Fire Fighters.

Lawrence P. Schaefer, Douglas L. Micko, Schaefer Law Firm, LLC, Minneapolis, MN, for amici curiae Allen Berryman and Ronald Kastner.

Considered and decided by BJORKMAN, Presiding Judge; STONEBURNER, Judge; and

CRIPPEN, Judge.*

**OPINION**

BJORKMAN, Judge.

These appeals involve a dispute between appellants Minneapolis Police Relief Association (MPRA) and Minneapolis Firefighters Relief Association (MFRA) and respondent City of Minneapolis over the calculation of retirement and surviving-spouse benefits paid from the associations' funds. Following a bench trial, the district court entered judgment declaring that the associations had improperly calculated benefits, and it granted injunctive relief to the city, requiring the associations to recalculate benefits and resulting levy requests, and to recoup overpaid benefits from association members. We conclude that the district court erred by interpreting Minn.Stat. § 69.77 (2010) to require bylaw amendments before certain items were added to the benefits calculation, but find no error in the determinations that the associations improperly calculated certain benefits. And, while the order for recoupment was an appropriate exercise of the district court's discretion, we conclude that the district court abused that discretion by ordering the associations to oppose all challenges to recoupment. Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

**FACTS**

The legislature established the associations to "create, maintain, and administer" pension funds for their members and beneficiaries. Minn.Stat. §§ 423B.04, subd. 2 (police officers), 423C.04, subd. 1 (firefight-

ers) (2010). The associations calculate retiree and surviving-spouse benefits by first determining the number of units to which an individual is entitled based on his or her years of service or as a surviving spouse. Minn.Stat. §§ 423B.09, subd. 1(a), 423C.05, subd. 2(b) (2010). The associations next calculate the value of a unit, which is tied by statute to the salaries of current workers: "1/80 of the current monthly salary of a first grade patrol officer" for police, Minn.Stat. § 423B.01, subd. 20 (2010), and "1/80 of the maximum monthly salary of a first grade firefighter" for firefighters, Minn.Stat. § 423C.01, subd. 28 (2010).

Under the Police and Firefighters' Relief Association Guidelines Act (guidelines act), the city is required to make an annual contribution to the associations' funds in an amount determined by the associations to be the "minimum obligation" of the city. Minn.Stat. § 69.77, subds. 4, 6. To the extent that the city does not include the full amount of its minimum obligation "in the levy that the [city] certifie[s] to the county auditor in any year, the officers of the relief association shall certify the amount of any deficiency to the county auditor." *Id.*, subd. 7(c). Upon verification of a deficiency, the county auditor is required to "spread a levy over the taxable property of the municipality in the amount of the deficiency certified to by the officers of the relief association." *Id.* The state auditor and the commissioner of revenue are responsible for determining compliance with the guidelines act. *Id.*, subd. 1(c); *see also* Minn.Stat. § 6.495 (2010) (requiring auditor to conduct annual audits of associations and file reports with association boards and related municipalities).[1]

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. Municipalities to which the guidelines act applies are required to comply with its provi-

sions in order to levy property taxes to support relief associations and to receive police and fire state aid. Minn.Stat. § 69.77, subd. 1.

In February 1995, the city sued the associations, challenging their unit-value calculations and corresponding computations of the city's minimum obligations. The city alleged that the associations improperly included, for police, a shift differential,[2] sick leave pay, and semi-annual overtime pay; and for firefighters, a selection premium,[3] sick leave pay, and overtime pay. The parties settled that litigation in September 1995.

The settlement agreement required the associations to amend their bylaws to define the term "salary" for purposes of calculating unit value, subject to approval by the city. The agreement expressly stated that "[t]he purpose of defining the term by amendment to the by-laws is to prevent future differences of opinion on the elements of compensation to be included in salary." Pursuant to the agreement:

> The term "salary" shall include the following elements of compensation, to the extent they are payable under a collective bargaining agreement [ (CBA) ]:
>
> > For [MFRA]: (a) base wages, including the FLSA overtime attributable to the regularly scheduled work period; (b) selection premium; (c) the uniform and professional allowance paid to firefighters; (d) longevity payments; (e) an average of overtime actually worked in excess of FLSA overtime amounts by firefighters with 25 years or more of service, up to a maximum of 136 hours; in the immediately preceding year; (f) the maximum sick leave buy-back benefit available to first grade firefighters. Salary shall not include severance

payments, workers' compensation payments, and employer-paid amounts used by employees toward the cost of health and medical insurance coverage. Any new item of compensation granted to first grade firefighters in the collective bargaining process after April 15, 1995, may be included in salary by action of the [MFRA], provided that at least 50 percent of all first grade firefighters are eligible to receive the new compensation item. The amount to be included in salary for any such new compensation item shall be the average amount paid to those first grade firefighters who received the compensation item.

> > For MPRA: (a) base wages; (b) shift differential; (c) the uniform and professional allowance paid to patrol officers; (d) longevity payments; (e) 60 hours of accumulated compensatory time; (f) work-out program payments; and (g) the maximum sick leave buy-back benefit available to top grade patrol officers. Salary shall not include severance payments, workers' compensation payments, and employer-paid amounts used by employees toward the cost of health and medical insurance coverage, and canine maintenance fees. Any new item of compensation granted to top grade patrol officers in the collective bargaining process after April 15, 1995, may be included in salary by action of the MPRA, provided that at least 50 percent of all top grade patrol officers are eligible to receive the new compensation item. The amount to be included

2. According to the police collective-bargaining agreement, a "shift differential" is an additional amount paid to "[e]mployees in the Department who work a scheduled shift in which a majority of the work hours fall between the hours of 6 p.m. and 6 a.m."

3. The firefighters collective-bargaining agreement defines a "selection premium" as an additional amount paid "only to employees working in the job title of Fire Fighter."

in salary for any such new compensation item shall be the average amount paid to those top grade patrol officers who received the compensation item. Both associations amended their bylaws to incorporate substantially similar language, and the city ratified the amendments.

The state auditor issued management letters for the years ending December 31, 2003, and December 31, 2004, opining that the associations had improperly calculated unit values by including salary items that were not permitted under the settlement agreement and amended bylaws. The auditor indicated that the MPRA improperly (1) added a shift differential to the payout of compensatory time, sick leave, and vacation time; and (2) included the maximum available vacation time, holiday pay, overtime cash out, and performance premium, rather than the average amount paid to top-grade patrol officers in each of those categories. With respect to the MFRA, the auditor stated that the association improperly (1) added a selection premium to the payout of vacation time, sick leave, and holiday pay; and (2) included the maximum available 136 hours of overtime, rather than the average worked by firefighters with 25 or more years of service, and the maximum available 48 hours of vacation payout, rather than the average amount paid to first-grade firefighters. The associations disputed the auditor's conclusions.

In 2006, the city commenced this litigation seeking (1) a declaration that the associations' "determinations of salary for pension calculations were and are not calculated according to law, are in breach of the 1995 Settlement Agreement and are declared invalid and should be recalculated," (2) injunctive relief, and (3) recoupment of "amounts paid by the City based on improper calculations."

The associations moved to dismiss the complaint, arguing in relevant part that their members—retired police officers, firefighters, and their surviving spouses— were indispensable parties to the litigation, and that the city's claims were barred by the statute of limitations. The district court denied the motion on all grounds. This court affirmed, explaining with respect to the joinder issue that the members' interests would be adequately represented by the associations:

> Minnesota law recognizes that an organization can litigate the interests of its members. Here, the associations are maintained by [the active and retired members of the associations and surviving spouses]. All of the individuals whose interests could be affected by a declaratory judgment are represented by the associations. And we agree with the district court's observation that this case is primarily "a dispute between the contributor to and the administrators of the pension funds about the proper method of calculating the contributor's minimum obligation." The individual members of the associations are not indispensable parties.

*City of Minneapolis v. Minneapolis Police Relief Ass'n,* No. A07–420, 2008 WL 1747923, at *4 (Minn.App. Apr. 15, 2008) (citations omitted), *review denied* (Minn. June 25, 2008).

After the appeal, the city moved for partial summary judgment and the associations sought summary judgment. The district court granted the associations' motion in part, rejecting the associations' equitable defenses of waiver, estoppel, and laches, but dismissing the city's contract-based claim because the associations had complied with the settlement agreement by amending their bylaws. With respect to the city's motion, the district court declared that MPRA's inclusion of shift differential in the calculation of sick-leave payout and the MFRA's computation of

non-FLSA overtime, without amending the bylaws and obtaining the city's ratification, violated the relevant statutes and bylaws. But the district court found the record insufficient to support summary judgment on the issues of whether MPRA violated its bylaws by applying a shift differential to all hours included in its unit-value calculation, and whether the MFRA violated its bylaws by applying selection premium to sick and vacation payout hours.

The remaining issues were tried to the district court. In its findings of fact, conclusions of law, and order for judgment, the district court declared further violations of the statutes and bylaws in the MFRA's application of a selection premium to sick-leave payout; the MPRA's application of the shift differential to the calculation of compensatory time; and the MPRA's calculation of the shift differential based on all possible hours worked, rather than an average number of hours worked by top-grade patrol officers. The district court granted the city's request for injunctive relief, ordering the associations to change their unit-value calculations. But the court concluded that the city was not entitled to the equitable remedy of recoupment because there was an adequate remedy at law provided by Minn.Stat. § 69.77, pursuant to which the court ordered the associations to recalculate levy requests from 2000 forward, and to amortize amounts received in excess of the recalculated levy requests. The district court later amended its findings and order for judgment, reaffirming its determination that the city may not recoup from the associations' members, but ordering the associations to do so. The amended order for judgment directs the associations to submit their recoupment plans to the district court; to "apply the standard of care customarily exercised by professional fiduciaries administering pension plans in recouping" the overpayments; and to "oppose any and all challenges to the recoupment."

The associations appealed, first from the order granting injunctive relief, see Minn. R. Civ.App. P. 103.03(b), and later from the judgment, see Minn. R. Civ.App. P. 103.03(a). This court consolidated the appeals.

## ISSUES

I. Did the district court err by determining that Minn.Stat. § 69.77 requires the associations to amend their bylaws before adding new items of compensation to the unit-value calculations?

II. Did the district court err by determining that the associations otherwise miscalculated unit values?

III. Did the district court err by rejecting the associations' equitable defenses?

IV. Did the district court err by ordering the associations to recoup overpaid benefits from their members?

## ANALYSIS

■■ In the absence of a motion for a new trial, our scope of review includes substantive legal issues properly raised to and considered by the district court, whether the evidence supports the findings of fact, and whether those findings support the conclusions of law and the judgment. See Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minn., 664 N.W.2d 303, 309–10 (Minn.2003) (stating that new-trial motion is not prerequisite to appellate review of substantive legal issues properly raised and considered in district court); Gruenhagen v. Larson, 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976) (stating that absent motion for new trial, appellate courts may review whether evidence supports findings of fact and whether findings support conclusions of law and judgment).

We also review pretrial orders denying summary judgment to the extent that those orders "involve the merits or affect the judgment" being appealed. Minn. R. Civ. P. 103.04; *see also Schmitz v. Rinke, Noonan, Smoley, Deter, Colombo, Wiant, Von Korff & Hobbs, Ltd.,* 783 N.W.2d 733, 744 (Minn.App.2010) (holding that summary-judgment denials based on legal determinations are within scope of review), *review denied* (Minn. Sept. 21, 2010).

■ The parties agree that these appeals raise primarily legal issues surrounding the proper interpretation and application of the relevant statutes and bylaws, subject to this court's de novo review. *See, e.g., Asian Women United of Minn. v. Leiendecker,* 789 N.W.2d 688, 690–91 (Minn.App.2010) (holding that de novo review applies to interpretation of both statutes and bylaws). The legal determination that an equitable defense is not available as a matter of law is subject to de novo review. *SCI Minn. Funeral Servs., Inc. v. Washburn–McReavy Funeral Corp.,* 795 N.W.2d 855, 861 (Minn.2011). But we review the district court's decision to grant available equitable relief for an abuse of discretion. *Id.*

## I. Minn.Stat. § 69.77, subd. 11, does not require relief associations to amend their bylaws before adding new compensation items to unit-value calculations.

■ The associations assert that the district court erred by applying Minn.Stat. § 69.77, subd. 11, to require the associations to amend their bylaws to include new items of compensation in their unit-value calculations. We agree. The statute requires city ratification of "[a]ny amendment to the bylaws or articles of in-

corporation of a relief association which increases or otherwise affects the retirement coverage provided by or the service pensions or retirement benefits payable from [the associations]." Minn.Stat. § 69.77, subd. 11. But the statute does not, by its terms, establish under what circumstances the associations are required to amend their bylaws.

The associations amended their bylaws in connection with the 1995 settlement agreement, and the city ratified those amendments. The amended bylaws expressly permit the associations to include within the unit-value calculation new items of compensation obtained through collective bargaining, without reference to additional bylaw amendments or city ratification. In other words, the postsettlement bylaws expressly authorize the associations to do the very thing that the city argues— and the district court concluded—that the associations cannot do without amending the bylaws. The district court reasoned that the language of the bylaws cannot preempt the requirements of Minn.Stat. § 69.77, subd. 11, and we agree. But the statute only requires ratification *if* an amendment is made; it does not speak to *when* such amendments must be made. Accordingly, we conclude that the district court erred by determining that the associations violated Minn.Stat. § 69.77 by failing to amend their bylaws to include additional items of compensation and reverse the district court's judgment in this respect.[4]

## II. The associations miscalculated certain benefits, resulting in overpayments to members and excess contributions by the city.

The associations next challenge the district court's determinations that the associ-

---

4. Having rejected this claim on the merits, we need not reach the associations' argument that the district court should not have consid-

ered this claim because the city did not assert it in the complaint.

ations calculated benefits in a manner inconsistent with the definitions of salary in the settlement agreement and amended bylaws. The district court found calculation errors arising from: (1) the MPRA's inclusion of a shift differential in calculating sick-leave payout; (2) the MPRA's inclusion of a shift differential in calculating compensatory time off; (3) the MFRA's inclusion of a selection premium in calculating sick-leave payout; and (4) the MFRA's use of 136 hours when calculating non-FLSA overtime. The associations argue that they did not err in calculating benefits. We disagree.

■ The first three calculation disputes center on whether the salary figure used in determining unit value must be grounded in the city's actual payroll practices or whether the associations can, in their discretion, include other items of compensation allegedly available—even if not actually paid—under the associations' respective CBAs.

The associations rely on language in the settlement agreement and bylaws that "[t]he term 'salary' shall include the following elements of compensation, to the extent they are *payable* under a collective bargaining agreement." (Emphasis added.) They also point to opinions they obtained from their own legal counsel that interpret the CBAs to require the inclusion of shift differential in the calculation of sick-leave payout and compensatory time off for police officers, and selection premium in the calculation of sick-leave payout for firefighters. It is undisputed that these compensation items were "new" under the settlement agreement and amended bylaws. The city argues they should not be included in the unit-value calculations because active patrol officers and firefighters have not actually received these items of compensation.

In resolving this issue, we focus on the language of the settlement agreement and amended bylaws, rather than interpreting the CBAs, a function typically reserved to other forums. *See Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 211, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985) (explaining that federal law preempts state-law claims dependent on analysis of CBA terms for their resolution); *Bhd. of Maint. of Way Emps. v. Soo Line R.R.,* 266 F.3d 907, 910 (8th Cir.2001) (stating that "[a]n arbitrator's task is to interpret and apply the relevant [CBA]."). In defining the elements of compensation included in "salary," the agreement and bylaws require that new items of compensation be tied to the "average amount paid to those top grade patrol officers [or first grade firefighters] who received the compensation item." We construe this language to allow inclusion of new items of compensation authorized by a CBA only to the extent that they are actually paid to active patrol officers or firefighters.

Our interpretation of the settlement agreement and amended bylaws not only comports with their plain meaning but also is consistent with the express statutory requirement that benefits be based on the "current monthly salary" of top-grade patrol officers and "maximum monthly salary" of first-grade firefighters. Minn.Stat. §§ 423B.01, subd. 20; 423C.01, subd. 28. Indeed, it is illogical to interpret the statutes, or the settlement agreement from which the bylaws derive, to permit the associations to use higher salary figures for calculating retirement benefits than the salaries actually paid to current officers or firefighters. *See* Minn.Stat. § 645.17 (2010) (providing that legislature does not intend an absurd result); *Brookfield Trade Ctr., Inc. v. Cnty. of Ramsey,* 584 N.W.2d 390, 394 (Minn.1998) (declining to construe contract in manner that leads to "a harsh and absurd result"). Because we conclude

that the agreement and bylaws require the associations to calculate unit values based on compensation actually paid to current police officers and firefighters, we affirm that portion of the district court's judgment declaring unlawful (1) the MPRA's inclusion of a shift differential in calculating sick-leave payout; (2) the MPRA's inclusion of a shift differential in calculating compensatory time off; and (3) the MFRA's inclusion of a selection premium in calculating sick-leave payout.

■ The remaining calculation dispute—related to the number of non-FLSA overtime hours used in determining the salary of a first—grade firefighter-presents a slightly different issue. MFRA argues that it established through testimony that the MFRA and the city agreed that they would use 136 hours in the salary calculation, rather than determining an average amount of hours actually worked. The district court did not expressly address this testimony, but this omission is not critical because evidence of contracting parties' intent cannot be used to defeat the unambiguous terms of a written settlement agreement. *See Carl Bolander & Sons, Inc. v. United Stockyards Corp.*, 298 Minn. 428, 433, 215 N.W.2d 473, 476 (1974) (declining to disregard the plain language of the contract in the guise of effectuating the parties' unexpressed intent). Accordingly, we affirm the district court's declaration that the MFRA miscalculated benefits by including 136 hours of overtime.

### III. The district court did not err by rejecting the associations' equitable defenses.

The associations assert that the district court erred by rejecting their equitable defenses of laches, waiver, and equitable estoppel. We disagree and address each defense in turn.

■■ "Laches is an equitable doctrine which applies to prevent one who has not been diligent in asserting a known right from recovering at the expense of one who has been prejudiced by the delay." *Clark v. Reddick*, 791 N.W.2d 292, 294 (Minn. 2010) (quotations omitted). The district court found no unreasonable delay, reasoning that

[the city] did not discover the violation until 2004. [The city] filed this suit on June 9, 2006, two years after [the city] discovered [the associations'] miscalculation of pension benefits and after attempts to resolve the issue were unsuccessful. While there was a delay in the time from discovery to filing, there is no evidence said delay was unreasonable under the circumstances.

The district court's findings in this respect are not clearly erroneous, and we conclude that the court did not err by rejecting the laches defense. The record reflects that the state auditor initially released its 2003 management letters in March and July 2004 and subsequently amended the letters to respond to the associations' concerns. The city conducted an independent investigation and, upon determining that it concurred with the auditor's opinions, the city initiated discussions with the associations in an effort to resolve the issues. When those discussions failed, the city council authorized litigation in January 2006, and this action was commenced in June 2006. At all relevant times, the city has made no secret of its position on the unit-value calculation issues. And we agree with the district court that the city should not be penalized for attempting to resolve the matter without judicial intervention. *See Hebert v. City of Fifty Lakes*, 744 N.W.2d 226, 233 n. 6 (Minn. 2008) (explaining that "a party is barred by laches when the delay is so long and the circumstances of such character as to es-

tablish a relinquishment or abandonment of rights" (quotation omitted)).

■ Waiver is the "voluntary and intentional relinquishment of a known right." *Ill. Farmers Ins. Co. v. Glass Serv. Co.*, 683 N.W.2d 792, 798 (Minn. 2004). The party alleging waiver must provide evidence that the party allegedly waiving the right had both knowledge of the specific right and the intention to waive the right. *Id.* Knowledge may be actual or constructive, and intention may be inferred from conduct. *Carlson v. Doran*, 252 Minn. 449, 456, 90 N.W.2d 323, 328 (1958). Waiver must be based on more than course-of-dealing evidence and must show an intentional relinquishment of the known right on the disclosed facts. *Citizens Nat'l Bank of Madelia v. Mankato Implement Inc.*, 441 N.W.2d 483, 487 (Minn.1989); *see also In re Commitment of Giem*, 742 N.W.2d 422, 432 (Minn.2007) (emphasizing that waiver "arises from voluntary choice, not mere negligence"). When the facts are undisputed, waiver is a legal question. *Montgomery Ward & Co. v. Cnty. of Hennepin*, 450 N.W.2d 299, 304 (Minn.1990).

■ The associations allege that the city waived its right to challenge the associations' unit-value benefit calculations by levying the amounts requested by the associations. We disagree. The statutes make clear that legal action is the city's only recourse if it disagrees with a benefit calculation. *See* Minn.Stat. § 69.77, subd. 7(c) (requiring county auditor to levy amount certified by associations as municipal obligation). Moreover, although it is clear, by virtue of the prior litigation, that the city was aware of its right to challenge the calculations, the evidence in the record does not support a conclusion that the city knowingly relinquished that right. Accordingly, we conclude that the district

court did not err by rejecting the associations' waiver defense.

■ Equitable estoppel affords a district court wide discretion but "is not freely applied against the government." *Prairie Island Indian Cmty. v. Minn. Dep't of Pub. Safety*, 658 N.W.2d 876, 890 (Minn.App.2003) (quotation omitted). "Because courts must ... consider the public interest in applying estoppel against the government, a governmental entity will be estopped only if it committed affirmative misconduct." *Concept Props., LLP v. City of Minnetrista*, 694 N.W.2d 804, 821 (Minn.App.2005), *review denied* (Minn. July 19, 2005). This more restrictive application of estoppel to the government is warranted because (1) "courts should not permit unauthorized raids on the public treasury"; and (2) "courts would undermine the separation of powers principle by refusing to enforce legislation due to misrepresentations by agency officials." *Dep't of Human Servs. v. Muriel Humphrey Residences*, 436 N.W.2d 110, 118 (Minn. App.1989), *review denied* (Minn. Apr. 26, 1989).

■ Applying these principles here, we conclude that equitable estoppel cannot be invoked to preclude the city from challenging the benefit calculations used in determining the city's minimum obligations. Nothing in the record supports a finding of affirmative misconduct by the city, and the facts of this case fit squarely within the purposes of restricting estoppel against the government. The cases relied on by the associations to support the application of estoppel are inapposite. *See Local Gov't Info. Sys. v. Vill. of New Hope*, 311 Minn. 258, 248 N.W.2d 316, 321 (1976) (declining to apply a restrictive estoppel standard "when considering the relationship of municipalities with one another under a joint powers agreement"); *Muriel Humphrey Residences*, 436 N.W.2d at 118

(explaining that "restrictive application of estoppel" is not required when claimant seeks access to benefits to which they are entitled (contrary to previous government advice), because "the court is neither allowing an unauthorized invasion of the public treasury nor refusing to enforce properly passed legislation"). On this record, we conclude that the district court did not err in determining that equitable estoppel does not apply.

**IV. The district court did not err by directing the associations to recoup overpayments from their members, but the district court abused its discretion by requiring the associations to oppose any challenge to recoupment.**

The associations argue that the district court erred by ordering them to recoup overpaid benefits from their members, asserting that the city's exclusive remedy derives from Minn.Stat. § 69.77, subd. 8, which provides for amortization of amounts paid by the city in excess of the minimum obligations determined by the associations: "Any sums of money paid by the municipality to the relief association in excess of the minimum obligation of the municipality in any year must be used to amortize any unfunded actuarial accrued liabilities of the relief association." The district court initially agreed, ordering the associations to recalculate the unit values and resulting contribution requests for each year since 2000, but finding that the city was not entitled to recoupment from members of the associations.

In its amended findings and order for judgment, the district court explained that

its original conclusions were "incomplete and did not distinguish between (1) [the city's] excess contributions to [the associations] because of [the associations'] incorrect calculations of unit values since 2000 and (2) [the associations'] overpayments to individual members and beneficiaries since 2000 because of [the associations'] incorrect calculations of unit values." Although the amortization statute provides the city with an adequate remedy for the improper calculations of its minimum contributions, the court reasoned, there is not an adequate remedy at law for the associations' overpayments to members and beneficiaries. The district court observed that the associations have a fiduciary duty to recoup overpayments from their members and beneficiaries.[5]

The associations argue that the district court's order requiring them to recoup overpaid benefits (1) conflicts with the previous order, affirmed by this court, denying the associations' request to join their members as parties; (2) violates due process given their vested right to pension benefits; and (3) exceeds the scope of the remedy provided for in the guidelines act. We address each argument in turn.

■■■ As to the first argument, we disagree that requiring the associations to recoup overpaid benefits from their members is inconsistent with the prior determination that association members are not indispensable parties. From the beginning, this case has been about the appropriate items of compensation to include in unit-value calculations used to determine individual retirement and surviving-spouse benefits. Both the district court and this court reasoned that the associations' inter-

---

5. The associations argue that the district court erred by basing injunctive relief on their fiduciary duties because the city dismissed its fiduciary-duty claim. We disagree and read the district court's reference to the associa-

tions' fiduciary duties as no more than an observation that, by complying with the recoupment order, the associations will also fulfill their fiduciary duties.

ests are aligned with those of their members and beneficiaries, and thus that joinder of the individual members was not necessary.[6] This commonality of interests is demonstrated by the members who are before this court as amicus curiae, who take the same positions in these appeals as the associations. In sum, although the recoupment order may have a more significant financial impact on the members than they anticipated, it does not generate interests in the litigation that are any different from the interests that have already been addressed by the district court and this court.

■■■ We construe the associations' second argument as a substantive due-process challenge. This argument is unavailing. Association members and beneficiaries do not have a right to overpayment of pension benefits. *See Nexus v. Swift*, 785 N.W.2d 771, 779 (Minn.App.2010) ("The threshold requirement of any due-process claim is that the government has deprived a person of a constitutionally protected liberty or property interest; in the absence of a liberty or property interest, a right to due process does not accrue."). Accordingly, their due-process challenge fails as a matter of law.

■■■ Finally, the associations assert that the district court did not have authority to order recoupment because the relevant statutes do not provide for such a remedy. But it is this very absence of an adequate legal remedy on which the district court relied in granting equitable relief. Thus, the associations' argument and

authority forbidding courts from adding words or meaning to the statute are inapposite.

The associations cite Minn.Stat. § 356.401 (2010), which provides that "[n]one of the money, annuities, or other benefits provided for in the governing law of a covered retirement plan is assignable either in law or in equity or subject to state estate tax, or to execution, levy, attachment, garnishment, or other legal process, except as [otherwise provided in enumerated statutory sections]." We agree with other courts that have rejected the application of this type of execution exemption statute to preclude a benefits plan from recouping overpayments. *See, e.g., Butler v. Aetna U.S. Healthcare, Inc.*, 109 F.Supp.2d 856, 866–867 (S.D.Ohio 2000). The associations cite no other authority precluding the district court's exercise of its equitable power.

■■■ Although we conclude that the district court acted within its discretion in ordering the associations to recoup overpaid benefits, we are troubled by the portion of the district court's order requiring the associations to oppose challenges to recoupment. We agree that members may not relitigate the propriety of the recoupment remedy, but the district court's order can be construed to go beyond stating this preclusive effect. We note that the district court appropriately afforded the associations significant discretion to determine the manner in which to recoup the overpayments. Requiring the associations to

---

6. The associations emphasize the district court's statement that the dispute here is "between the contributor to and the administrator of the pension funds about the proper method of calculating the contributor's minimum obligation." When read in context, it is clear that the district court was contrasting this case to a case in which certain participants in a retirement fund sought to prevent

the payment of benefits to other participants, and a Rhode Island court held that the participants who would lose benefits were indispensable parties. *See Abbatematteo v. State*, 694 A.2d 738 (R.I.1997). The quoted language supports the determination by the district court and this court that the associations' interests were aligned with (all of) their members.

oppose any and all challenges to recoupment limits the appropriate exercise of discretion and could prevent the members from participating in the process to determine how recoupment will be achieved. The order also could be read to preclude members from seeking to correct errors made in the recoupment process. For these reasons, we reverse the portion of the injunction order requiring the associations to oppose challenges to recoupment to that extent.

## DECISION

For the reasons explained herein, we reverse (1) the district court's declaration that the associations violated Minn.Stat. § 69.77 by failing to amend their bylaws before adding new items of compensation to their unit-value calculations; and (2) the portion of the district court's injunction order requiring the associations to oppose all challenges to recoupment. In all other respects, we affirm the judgment of the district court and remand for further proceedings consistent with this opinion.

**Affirmed in part, reversed in part, and remanded.**